## GRAHAM ET AL v. ABERCROMBIE, ET AL.

1. When the petition of administrators claiming distribution as the representatives of a distributee is dismissed, and the final settlement in the Orphans' Court is made with other parties, the proper mode to revise the proceedings rejecting the claim is by *certiorari*, and a writ of error will be dismissed.

2. The interest of a distributee in an unsettled estate, is the subject of assignment; if one is made, it divests the interest of the distributee, so that no proceeding can be had by his representatives against the administrator; his assignee is thereby invested with all his rights, and they may be asserted by him in his own name.

Writ of Error to the Orphans' Court of Lowndes.

THE transcript of the record of this cause contains the entire proceedings in relation to the estate of Alex. Abercrombie, from the grant of administration to its final settlement. So much as is necessary to the correct understanding of the errors assigned here, will be recited.

Administration was granted on the 2d August, 1841, to Martha Abercrombie, the widow of the decedent, and Thomas Abercrombie; at the same time an order was made, authorizing them

Graham, et al. v. Abercrombie, et al.

to sell the perishable property of the estate, at public auction, on six months credit.

On the 1st of November of the same year, as the record recites, Mrs. Abercrombie filed her petition, setting forth, that the decedent died without issue, whereby she by law is entitled to one one half of his personal estate; that the estate is in no manner embarrassed, or in debt, and therefore she prayed an order for the division of the estate. An order was accordingly made, that the whole of the personal estate should be divided into two parts, by certain commissioners then named, and that one part should be set apart to her, to be determined by lot. What purports to be a division and allotment is found in the transcript, under the signatures of three of the persons named as commissioners, and at the foot is written, "examined, admitted, and the usual orders to be made." Signed by the judge of the County Court, on the 3d January, 1842.

On the 21st of November, of the same year, Mrs. Abercrombie, as the record recites, petitioned the Judge of the County Court to award a writ of dower, she alledging that her late husband died seized and possessed of certain lands, described on the minutes. The order for the writ was made the same day, and the writ, which is copied into the transcript, was then issued. A return of certain persons styling themselves commissioners, summoned by the sheriff to lay off the dower, &c., appears, allotting her one half the lands described in the return, which are the same as mentioned in the previous order. This return bears date the 21st January, 1842, and was examined and admitted. The clerk was also directed to enter said dower upon record, and to file the return as an office document.

On the 3d July, 1842, Thomas Abercrombie returned a sale bill of one half of the personal property allotted by the commissioners as before stated.

On the 27th March, 1843, Francis M. Abercrombie, and Alex. Graham, as administrators of James Abercrombie, as the transcript recites, petitioned the Court to issue a rule to the administrators of Alex. Abercrombie, to show cause why they should not make final settlement and distribution of the estate among the several heirs; and a rule was accordingly granted for them to show cause, on the 2d Monday of May, then next. An alias rule was ordered by the Court, on the 19th day of June, of the same

70

year, for the administrators to show cause, on the first Saturday in August, and no further proceedings seem to have been had upon the rule, until the 25th of November, when the minutes recite as follows;

This day the petition of Francis W. Abercrombie and Alex. Graham, administrators of James Abercrombie was considered by the Court., Petitioners claimed to represent their intestate, who was an heir and brother of Alex. Abercrombie, and prayed for a rule, &c. Upon the return of the rule, the administrators of Alex. Abercrombie deceased, appeared in Court and put in their plea, stating that James Abercrombie, in his life-time, duly assigned his distributive share to be paid and delivered to William Burroughs, and that they had duly promised and assumed to pay the said Burroughs. The opposite party did not appear and join issue; the cause was then continued to this term, and upon evidence adduced, the Court was of opinion that said James Abercrombie had assigned away his interest; and that his administrators have no interest in the estate of Alex. Abercrombie. "Whereupon it is ordered by the Court, that said petition be dismissed, at the cost of the petitioners." The Court also ordered the petition to be recorded in the minutes of the Court, and the original, with the pleas, to be filed as office documents. Afterwards, at the same term, a final settlement of the estate was made, and the following persons ascertained as distributees, to wit: Thomas Abercrombie, Archibald Abercrombie, Mary Burroughs, wife of William Burroughs, and James Abercrombie, to William, Isaac, Cyrus, Mary and Eliza, children of Elizabeth Billinsglea, the said Mary being the wife of David Long and the said Eliza, the wife of Hamilton Moore. All these persons named as distributees are the brothers and sisters of the decedent, or children of a sister. The part of Mrs. Billingslea to be divided, share and share alike, between her children, and the part of James Abercrombie to remain in the hands of the administrators, to abide the process of the law. The administrators were ordered to pay the several amounts ascertained to the distributees. Another distribution was made of another portion of the assets, one half to the same parties, and the other half to Martha Lowry, formerly Abercrombie, she having since intermarried with Wm Lowry, who by the intermarriage became, in right of his wife, a co-administrator.

Graham, et al. v. Abercrombie, et al.

The writ of error is prosecuted by Alexander Graham and Francis W. Abercrombie, as administrators of James Abercrombie, against the other parties to the settlement, and the errors assigned are as follows:

1. The action of the Court in the matter of the petition of Mrs. Abercrombie for a division of the personal estate of the decedent.

2. The action of the Court in granting her petition for dower in the lands, without giving the legal notice.

3. In allowing the return made of the sale of the slaves of the estate.

4. The action of the Court upon the petition of the plaintiffs.

5. In allowing the account of the administrators without proper notice.

6. The action of the Court in the final decree.

A. GRAHAM, for the plaintiffs in error, submitted the following points:

1. The plaintiffs are parties to the final decree, as their intestate is recognized as entitled to a distributive share, therefore they have the right to re-examine all matters affecting his interest.

2. The order to divide the estate is irregular, as no other party was before the Court than the widow. The act evidently applies only to cases where the distributees are not the same persons as the personal representatives. [Dig. 196, § 22.] But if a division was proper under the act, parties were essential, and none are made. If the proceedings are sought to be sustained under the other enactment, [Dig. 173, § 5,] they are not conformable to it in any respect, [Green v. Green, 7 Porter, 19.]

3. The allotment of dower in the real estate is erroneous, in not conforming to the statute. [Dig. 173, § 5, Green v. Green, 7 Porter, 19.]

4. The sale of the slaves, &c. ought not to have been approved, as no necessity existed for the sale. [Dig. 196, § 22 ; Dearman v. Dearman, 4 Ala. Rep. 521.] As the sale was irregular, the decree should have been for the property in specie, instead of the price. [Dig. 305, § 43.]

5. The petition of the plaintiffs for distribution is founded on the statute. [Dig. 196, § 23.] If the creditors or assignees of a

distributee wish to assert rights to the distributive share, they must resort to another tribunal, but the assignment pretended here cannot be permitted to interrupt the usual course of proceeding. If it is conceded the matter shown was sufficient to dismiss the petition, it furnished no ground to direct the administrators to retain the portion coming to James Abercrombie, or his assignees.

6. The allowance of the accounts was irregular, as no notice was given, nor does it appear when they were stated. There is an entire omission to conform to the statute. [Dig. 229, § 41, 43 ; see also, Robinson v. Steele, 5 Ala. Rep. 473.]

N. Cook, contra.

GOLDTHWAITE, J.—1. The first inquiry here, is with reference to the rights of these plaintiffs to sue out a writ of error on the final decree. In terms, they certainly are not parties to it, and though in it the assumption is made, that James Abercrombie once was entitled as a distributee, yet the assumption also is made, that his interest was assigned during his life-time to some other person. The decree is neither in his, or his administrators' favor ; but the representatives of the estate then settled, are directed to retain his distributive share to abide legal process. In this particular, then, the decree is a denial to recognize him as entitled to distribution, and resolves the question into the same one which the Court below decided, when it dismissed the plaintiffs' petition.

In proceedings at common law, and usually in equity, the plaintiff sets out the nature of his claim upon the record, and that is inquired into at the same time as the other matters in dispute; but the mode of proceeding is different in testamentary causes, before the eclesiastical courts. In these, the administrator, &c. in possession of the fund, is entitled to call upon the party invoking the aid of the Court, to propound his interest, and if the interest is disputed, to controvert it by an exceptive allegation. [McRae v. Pegues, 4 Ala. Rep. 158.] If the interest is made to appear, the petitioner is admitted as a party, and if, upon exception, it cannot be shown, the petition is dismissed, because it is the interest alone in the subject matter of controversy, which entitles the one party to call upon the other. In its very nature, this investigation is al-

ways a preliminary proceeding, and if dismissed, the party has no right to interfere with subsequent proceedings until he is reinstated. In Cawthorne v. Weissinger, 6 Ala. Rep. 714, we applied this rule to a creditor of an insolvent estate, whose claim had been rejected in a proceeding commenced prior to the act of 1843, [Dig. 195, § 14,] and held, that the proper mode of examining the order rejecting his claim, was by *certiorari*. The principle of that decision is supposed to govern this case, and shows, that the proper mode to examine the order dismissing the plaintiffs as parties, is by *certiorari*, and not by writ of error. To avoid any misconception as to the extent of the decision, it is proper to remark, that by virtue of the act before cited, a writ of error is now given to the individual creditor, and to the personal representative when the contest is between them, upon the admission or rejection of a claim against an insolvent estate.

The result of this conclusion is, that the writ of error must be dismissed, but as the parties would probably proceed in the mode indicated, without a decision upon their claim, it is proper now to consider whether the plea assuming the fact stated by it as true, is sufficient to bar the plaintiff from proceeding to enforce distribution.

The act which provides, that any person entitled to the distribution of an intestate's estate, may at any time after eighteen months from the time of granting admininistration, petition the Orphans' Court for a distribution, [Dig. 198, § 23,] merely regulates the mode in which the Court shall proceed; but its jurisdiction over the matter of distribution, may be referred to its general testamentary powers, which are given by another act. [Dig. 300, § 21.] Indeed, this act seems to stand in the place of the statute 22 and 23 Chas. 2, c. 10, by which the ordinaries in England were invested with jurisdiction to compel administrators to settle the estate, and pay the same by due course of eclesiastical law, without the limitation imposed by the subsequent statute of 1 Jas. 2, c. 17, which restricted the compulsory jurisdiction, except at the instance of some person on behalf of a minor, a creditor, or the next of kin. See these statutes cited 4 Burn. E. L. 369.

It is evident, in the very nature of things, that there must be some mode, and some Court, by means of which an administrator may be relieved from the responsibility of ascertaining, who

are entitled to the surplus in his hands, and under whose direction a payment may be safely made. It is true, no adjudication, either English or American, is to be found, which touches the point, but it seems in some degree established by the course of proceedings in the eclesiastical courts. Thus it is said, the creditors to whom the testator owed any thing, and the legatees to whom the testator bequeathed any thing, *and all others having an interest*, are to be cited to be present at the taking of the account; otherwise, the account made in their absence, and they never called, is not prejudicial to them. And again, it behooveth the executor, or administrator, when he is cited by any one of the parties to render an account, to cite the next of kindred, in special, and all others in general, having, or pretending to have, interest in the goods of the deceased, to be present if they think fit at the rendering and passing of the account. And then, upon their appearance, or contempt in not appearing, the Judge will proceed to give sentence, and the account thus determined *will be final.* And this is expedient to be done, whether [the account is settled] at the instance of any party or not. [Burns E. L. 369, citing Swin. 468, and 1 Ought. 354.] After the Court has pronounced on the validity of the accounts, the executor or administrator ought to be acquitted, and discharged from further molestation and suits. [Ib. 371.] In the Archbishop of Canterbury v. Tappan, 8 B. & C. 151, the Court of Kings' Bench admits that an administrator has the right to require the sentence of the ordinary for his own protection, and determined, that no suit could be maintained on his bond without one. If then, the administrator is protected by the decree of the ordinary, when there are distinct claims for distribution, why should he not be protected when the claim is between the distributee and his assignee? or what right can a distributee who has assigned his interest be said to have, which will enable him to cite the administrator to an account? We can find no answer to these questions which do not go the whole extent of denying the validity of any assignment of the interest.

Now the general rule in equity is, that a chose in action is assignable, and vests in the assignee all the interest of the assignor. [Story's Eq. § 1039 to 1057.] Beyond this it has been repeatedly held, that if the debtor assents to the transfer, when the chose in action is a debt, the right of the assignee is complete at law,

so that he may maintain a direct action against the debtor. [See cases cited Story's Eq. § 1039.] A distributive share cannot be said to be in the nature of a debt, as it is entirely uncertain in amount, until ascertained by the settlement, and therefore no suit at common law can be maintained, in the name of the assignee. But in equity he is entitled to proceed in his own name, directly, against the *cestui que trust*, and we can see no just reason why he may not proceed in the same manner in the Orphans' Court, where the transfer is, with respect to a matter in which that Court possesses concurrent jurisdiction certainly, (if not so exclusively,) with a Court of Equity. It is true the statute of 1843 seems to contemplate that the settlement of estates shall be made by the personal representative on the one hand, with the legatees, or distributees, on the other, as it requires the party to file a statement on oath, of the names of the heirs, or legatees of the estate. [Dig. 229, § 43.] But we have seen that the same matter was necessary according to the common course of practice in testamentary causes, and therefore the proper construction of it is, to consider it as merely affirmatory of what the law then was, and as introducing no new rule. We are the more strongly inclined to this view, as the entire scope of our legislation upon the subject of the rights of distributees and legatees, seems to be, to give the Orphans' Court concurrent jurisdiction, to say the least of it, with Courts of Equity, of all matters affecting their rights. Besides this, any other construction would throw either the assignee or the administrators into a Court of Equity, to restrain the action of those plaintiffs who, upon the record, are shown to have no interest in this litigation.

Our conclusion is that if Mr. Abercrombie, in his life-time, assigned his interest in this estate to another, his representatives are not entitled to be heard in its settlement, and that all his rights have devolved on, and may be asserted by, his assignee, in his own name.

It will be seen, we have omitted to examine the other questions made by the assignments of error; this is not because we consider them unimportant, but because they do not affect the plaintiffs, until they show themselves entitled to raise them, by being parties to the record.

Writ of error dismissed.