## CHILDRESS, Adm'r, v. BENNETT.

1. B died in Tennessee, and administration was there granted upon his estate. Having also effects within this State, administration was also granted here. Held, that the administration in this State was ancillary to the principal administration in Tennessee, and the debts due here, being all paid, and there being no heir, distributee, or legatee, here, claiming the fund, it should be transmitted to the *forum domicillii*, on the application of the principal administrator, taking the necessary steps to prevent the waste or misapplication of the fund ; and that the orphans' court had power to make such an order.

Error to the Orphan's Court of Greene.

THE questions here presented, arise out of a petition presented to the orphans' court of Greene, by which, and the other proceedings found in the record, it appears, that one William L. Bennett, died in Williamson county, Tennessee, leaving a last will and testament, and that the plaintiff in error was appointed administrator *de bonis non*, with the will annexed, in the State of Tennessee—that the estate in Tennessee is largely insolvent, and in the course of settlement in a chancery court in that State, there being a large balance due to creditors.

It further appears from the record, that the defendant in error qualified as administrator of the estate of William L. Bennett in Alabama, in the orphans' court of Greene county: That he paid all the debts due in this State, and has made final settlement with the court, showing the sum of $1,623 66, remaining in his hands.

Upon this state of facts, the plaintiff in error presented his petition to the orphans' court, praying that the money in the hands of the administrator be paid to him, to meet the demands of creditors in Tennessee.

The court refused to grant the prayer of the petition, considering that application should be made to another forum.

This matter is now assigned as error.

PIERCE, for the plaintiff in error, made the following points:

1. There being no heirs, or legatees in Alabama, making application for distribution, the *domicilliary* administrator is entitled to the fund for distribution. [Richardson v. Dutch, 8 Mass. 506; Dawes v. Boyleston, 9 Id. 337; Stevens v. Gaylord, 11 Id. 264; Harvey v. Richards, 1 Mason, 413; Calhoun v. King, 5 Ala. 526.]

2. Being entitled to the fund for distribution, he is also entitled to it for the purpose of paying creditors.

3. The orphans' court has the power to decree, that the money be paid to the foreign administrator. [Clay's Dig. 301, § 1, 2; 303, § 33.]

ORMOND, J.—The administration granted in this State, is merely ancillary to the administration in the State of Tennessee, the *forum domicilii*. and the administration being settled, and there being neither heirs, distributees, or creditors, claiming the fund, it is clear it should be remitted to the administrator in the State of Tennessee, for distribution. [Harvey v. Richards, 1 Mason, 413; Dawes v. Boyleston, 4 Mass. 384; Miller's Estate, 3 Rawle, 312; Story's Con. of L. § 513.]

It appears, that although the estate is insolvent, the creditors in this State, have been paid their demands in full, to which, so far as we can judge from the record, no objection has been made. We are therefore spared the necessity of considering what would be the proper rule in such a case; whether the entire fund should be transmitted to the original foreign administrator, or whether it should be retained in this State, until the creditors here are paid. Also, whether the creditors here would be entitled to be paid their demands in full, or only a rateable proportion with those in the State of Tennessee? [Dawes v. Head, 3 Pick. 128.]

No question of that kind having been made, the only point raised upon the record is, whether the orphans' court of Greene, had the power to direct the administrator here, to pay the residue found to be in his hands, to the foreign administrator, there being as already observed, neither credi-

tor, heir, distribute, or legatee, in this State, claiming the funds.

In our opinion, the orphans' court has ample power upon this subject. It is, by the statute creating it, invested "with full jurisdiction of all testamentary and other matters, appertaining to an orphans' court, or court of probate." [Clay's Dig. 301, § 21.] Again, where one dies without any known place of residence in this State, "the will may be proved, or letters testamentary granted, or administration may be granted, in any county where the goods and chattels, and debtors, or any part thereof, of such testator, or intestate, may be." [Ib. 303, § 33.] It is difficult to suppose the legislature intended, that when in such a case as this, a partial administration was granted upon the estate of one dying in another country, the court granting it should not have power to make a final disposition of the funds. In the case of Harvey v. Richards, cited from 1 Mason, *supra,* Judge Story held, that when one did intestate in the East Indies, leaving property in Rhode Island, although .the distribution of personal property must be made according to the law of the *domicil* of the intestate, yet, that the court of chancery in Rhode Island had the power to make distribution according to the foreign law, the distributees being citizens of Rhode Island. He considered it an undisputed principle of international law, which by the comity of nations was recognized and enforced every where, that where administration was taken out, at the place of the *domicil,* a partial administration, taken out in another country, upon effects there, was merely auxiliary to the administration of the *domicil;* and that after satisfying the debts due at the place of such partial distribution, the residue would be remitted to the principal administration. He says, "when there are no creditors here, and no heirs or legatees here, but all are resident abroad, there can be no doubt that a court of equity would direct the remittance of the property, upon the aplication of any competent party."

This subject, as we have seen, has been placed by the legislature under the control of the orphans' court, and in our opinion, it has precisely the same power over subjects within its jurisdiction, as that which may be exercised by the

95

courts of chancery over the same subjects. The least that can be said is, that in such cases, it has concurrent jurisdiction with the chancery court. There are matters, it is true, growing out of the settlement of estates, such as pure trusts, and cases in which a discovery is wanted, where the powers of the orphans' court are not adequate to the exigency of the case, and of these our books of reports furnish several examples. But in those cases expressly confined to it, it may, and should exercise every power necessary to give effect to its jurisdiction, and make its action effectual.

No conceivable benefit could result from requiring the foreign administrator to apply to another tribunal, to give effect to the action of the orphans' court. The decree of the orphans' court will as effectually protect the local administrator as would the decree of a court of chancery, and it has the same power as the court of chancery, to provide the necessary guards against waste, and misapplication of the funds, and to provide that they shall reach their appropriate destination.

We were at first inclined to think, on the authority of Graham v. Abercrombie, 8 Ala. 552, that this court had not jurisdiction, by writ of error, to examine this question ; but upon further reflection, we incline to the opinion, that as the orphans' court in this case, admitted the plaintiff in error as a party to the proceeding, conceding his title to the money, but refusing to make the necessary order, because it supposed it had not power to make it, that this distinguishes this case from that above cited, and those on which it is founded ; and that being recognized as a party to the proceeding, the foreign administrator may prosecute a writ of error.

Let the decree of the orphans' court be reversed, and the cause remanded.