## SMITH & LOVELESS, ADM'RS. *vs.* HALL.

20   777
125   234

1. When a devisee's undivided interest in real estate is sold under execution at law against him, and the land is afterwards sold under an order of the Court of Probate, for the purpose of distribution, the purchaser at the sheriff's sale of the devisee's undivided interest, cannot petition the Court of Probate for a distribution of the proceeds of sale, under the statute which allows devisees, legatees and distributees to have a distribution of the estate after the lapse of eighteen months, (Clay's Digest, 196, §§ 23, 24,) (Dargan, C. J. and Ligon, J., *dissenting.*)

ERROR to the Circuit Court of Tallapoosa.

Tried before the Hon. J. J. Woodward.

The defendant in error filed his petition in the Orphans' Court of Tallapoosa County, setting forth, that John Loveless died in said county, after first having made and published his last will and testament, by which he devised certain lands to his wife for life, and to his children in fee at her death, to be equally divided among them; that there were ten children entitled to take under the will, among whom are John and Daniel Loveless, (the names of the others are also set

49

forth in the petition;) that Joseph C. Rawles, then sheriff of Tallapoosa county, after the death of the widow, became administrator with the will annexed of the elder John Loveless, and as such filed his petition in the Orphan's Court, setting forth that the lands devised could not be fairly, equally, and beneficially divided among the parties in interest, without making sale of them; that an order was accordingly granted, and a sale made in pursuance thereof. At this sale the lands brought $300.

The petition further alleged, that before Rawles, the administrator with the will annexed of John Loveless, filed his petition for the sale of the lands, and after the death of the widow of the testator, one John C. Holeman had obtained a judgment in the Circuit Court of Tallapoosa county, (in which the lands are situated,) against John and Daniel Loveless, two of the devisees under the will, upon which an execution issued to the coroner of Tallapoosa, which was levied upon the undivided interest which the defendants in that judgment had in the lands devised, which was sold, and the defendant in error became the purchaser; that the coroner made him a deed for the undivided interest of said John and Daniel, which was duly recorded. The petition further sets out, that after the purchase of the petitioner, and before the sale by the administrator with the will annexed, said administrator had received $111 for rent of the premises; that upon the expiration of his term office as sheriff, Rawles relinquished his administration, and paid over to the plaintiffs in error, who became administrators de bonis non with the will annexed, the purchase money and rents aforesaid, and that they yet have them in their hands; that the estate was not finally settled when the petition was filed, but more than eighteen months had elapsed since the grant of letters of administration.

He prays that the administrators de bonis non be compelled, by decree of the Court, to pay to him the portions to which John and Daniel Loveless would have been entitled under the will of John Loveless.

On this petition citations issued to the plaintiffs in error, who appeared, and filed reasons why the prayer of the petition should not be granted. They are numerous and prolix, but may be resolved into two, to-wit: 1st. That the petitioner

had no such interest in the estate of the testator as would entitle him be heard in the Orphans' Court; and, 2d, That he took no title to the premises devised by his purchase at the coroner's sale.

The principal facts stated in the petition were admitted in the Orphans' Court, and, without any bill of exceptions, were spread on the record at the request of the petitioner. The Orphans' Court dismissed the petition.

The case was taken to the Circuit Court by *certiorari*, where the judgment of the Orphans' Court was reversed, and on the record sent up, the Circuit Court rendered judgment in favor of the petitioner, without requiring the execution of a refunding bond.

From this judgment of the Circuit Court, a writ of error was sued out by the administrators with the will annexed, and the case brought here for revision.

The judgment of the Circuit Court is here assigned for error.

SEABORN WILLIAMS and J. FALKNER, for plaintiffs in error:

1. Daniel and John Loveless had no such interest in the land as was the subject of levy and sale under execution at law, and, therefore, Isaac P. Hall acquired no right by his purchase from the coroner of Tallapoosa.

2. The estate of Jno. Loveless was yet in the course of administration; the land was subject to be sold by the administrator to pay the debts of John Loveless; the administrator did sell, as is shown by the record.

3. If Hall acquired any title, it was legal; it will not be pretended he could have acquired any other. If legal, Hall had a right to enter into possession; if he had that right, ejectment was his remedy; if his title was not sufficient to support that action, it is good for no purpose whatever.

4. While the land was in the hands of the administrators it was trust estate, the administrator having a paramount right till the close of the estate, or it was found that it was not needed to pay debts.

5. The Orphans' Court is one of limited powers; has no other than is given by statute. The power here sought to be exercised was never conferred, or intended to be conferred, on the Orphans' Court.

6. It will not be pretended that the power of the Orphans' Court is concurrent with the Court of Chancery in such cases. It is denied that either court could have given the remedy sought. If, however, the judgment creditor, whose judgment Hall claims through or under, had seen fit, at a proper time, and under proper circumstances, to have gone into equity, he could have done so, and subjected the interests of Daniel and John T. Loveless.

7. The Orphans' Court has no power to substitute a stranger for an heir, or a distributee of an estate by process of law, without the consent of the heir, and allow such stranger such rights as to allow him to come forward and petition for distribution in a part or whole of the estate. Such a proceeding has never before been entertained, and is without the slightest foundation in law.

8. Nothing but the legal title to real estate can be sold under execution. Clay's Dig. p. 350, § 31. The legal title to an estate is in the personal representative until distribution, and consequently, is not subject to levy and sale under an execution against the heir. 10 A. R., 630. So far as the heir is concerned, the intestate's equitable or legal title to land is the same, and passes in the same way. 2 A. R. 712. As to the title of the personal representative to the real estate, see 10 A. R. 60, and 10 A. R. 393, and cases cited on plaintiff's brief in that case. By the construction of the Orphans' Court, it has no power to try questions of title to real estate; and to allow such a proceeding as this in the Orphans' or Probate Court, would involve that court, as well as heirs and distributees of estates, in endless difficulties.

HEFLIN, and BARNES & ALLISON, contra :

1. The title to real estate descends to the heir upon the death of the intestate *ancestor*, and not to the personal representative, and the administrator has nothing to do with it, and has no right to meddle with the same, unless for a division among the heirs under the statute or to pay debts. 2 A. R. 663; ib. 717; 12 A. R. 533; 15 A. R. 228 and 12 A. R. 391.

2. And the heir has such an interest in the land so descended, from his ancestor, as may be taken for his debts under an

an execution against him before distribution, or any action in the Probate Court; and the purchaser at the execution sale takes the title of the heir, subject to all the legal demands for the debts of the ancestor, while the title remained in the hands of the heir, that could have been enforced upon the land before the execution sale; in other words, the purchaser takes by his purchase, only such title as the heir had, and is substituted for the heir; and the land is liable to such proceeding, after the sale, as it would have been if no sale under the execution had taken place; the purchaser standing in the same condition as to distribution and sale to pay debts under the statute, as the heir did before the sale, he being by his purchase only an assignee of the heir; and the title of the purchaser and the other heirs may be divested, on the proper application of the administrator in the cases allowed by the statute, to pay debts or for distribution among the heirs; but in that case the purchaser is substituted for the heir whose interest has been sold, as in this case, and is thrown before the Orphans' Court to assert his interest for the proportional part of the amount of the sale made by the administrator, and he is entitled to the amount the heir would have got upon distribution. Mattock v. Sterne, 9 Ver. R. 326; Proctor v. Newhall, 17 Mass. R. 81; Griswold v. Penniman, et al., 2 Conn. R. 564; 16 Ohio 271; 12 A. R. 391; 17 A. R. 20.

3. Orphans' Court has, in the administration and settling up estates, equity jurisdiction, and an assignee may assert his interest in his own name, and it can make no difference that the assignee claims as a purchaser at an execution sale. When any one petitions the Probate Court for distribution, it is the duty of the administrator to bring those interested in the distribution before the court. Graham et al. v. Abercrombie et al., 8 A. R. 552. When the facts are all proven in the court below, the reversing court will render proper judgment upon the reversal, and not remand.

GOLDTHWAITE, J.—The act of 1812, (Clay's Dig. 196, § 23), gives the right, to any one entitled to the distribution of an intestate's estate, to proceed against the administrator, to compel distribution, at any time after eighteen months from the grant of letters. Another section of the same act confers

the same right upon legatees, (Clay's Dig. 197, § 24); and it is insisted, on the part of the defendant in error, that as he, by his purchase under the execution against two of the devisees, was invested with their interest in the lands of the testator, he was also substituted in their place as to their remedies to enforce distribution. The statute does not directly confer upon the purchaser, authority to proceed to obtain distribution in his own name; and the necessary result of the doctrine contended for, is, that if the interest of the devisee in the lands were sold to different purchasers, that in the event of a subsequent sale by the Probate Court, to pay debts or effect distribution, each purchaser would be entitled to proceed against the personal representative, and the consequence would be, that a court of limited powers would often be embarrassed, in the determination of adverse claims, involving the title of lands, and collateral to the main issues of administration, while the estate itself might be wasted in the costs of the proceedings. Another great inconvenience, if not a positive injury, would arise in relation to the refunding bonds, required by the same statute to be executed by the parties, in case the distribution is not made on a final settlement of the estate. Clay's Dig. 196, §§ 23–24. If the lands of the decedent were sold, under execution against the heirs or devisees, to fifty different purchasers, each must execute a refunding bond, to meet any debts which might thereafter come against the estate, and the personal representative forced to a separate suit on each of the bonds; while, on the other hand, by proceeding in the Probate Court, in the name of the devisee, legatee, or distributee proper, the integrity of the administration would be more fully maintained, and the difficulties arising from collateral issues in that court avoided.

The cases of Graham v. Abercrombie, 8 Ala. 552, and Petty v. Wafford, 11 ib. 143, decide, simply, that the assignee of an integral share of an estate may proceed in the Orphans' Court in his own name, to obtain distribution; but we do not understand that any of the decisions have gone to the length of holding, that different parties may be made by assignment of an interest in the estate, at partial settlements; or that a distributive share might, by assignment, be split into different portions, and each one having an interest be allowed to pro-

ceed in his own name in the Probate Court, for his portion. My own idea in relation to the statute under which these proceedings are instituted (Clay's Dig. 196, § 23–24), is, that it was intended to apply only to distributees and legatees *proper*, and was enacted for the purpose of enabling them, on a proper showing to the court, to force the executor or administrator to the distribution of a fund, which their necessities might require; but to hold that a devise of land may be cut up into different parts, and the holder of each be entitled to stand in the place of the devisee, as to all of his remedies in the Probate Court, would, in my opinion, not only be extending the operation of the statute beyond the intention of the legislature, but the means of introducing into that court, complexities and difficulties, which its powers are wholly inadequate to meet. The whole object of the probate laws seems to have been intended, to limit the jurisdiction of the Probate Court to the legitimate and natural relations growing out of administrations; to confer upon that court the powers necessary for the management and distribution of assets, in the direction of those who were immediately connected with administrations, such as heirs, legatees, and creditors, without providing for collateral relations which might arise, but leaving those relations to be provided for by courts, which, by the possession of more extensive powers and jurisdiction, were more competent to meet and provide for the exigency. The cases we have cited require us to recognize, on the final settlement of an estate, the right of the assignee to distribution in his own name: but a majority of this court think that the principle should not be extended beyond the decisions referred to.

It follows, from these views, that the Circuit Court erred, in reversing the judgment of the Orphans' Court; and judgment must be rendered here, reversing the judgment of the Circuit Court, and affirming that of the Orphans' Court.

LIGON, J.—The record presents two questions for the consideration of the court; 1st, Has the defendant in error any interest in the estate of John Loveless, deceased? and, 2d, Is his interest of such a character, that, under our statutes, it can be propounded in, and adjudged by the Orphans' Court?

It appears, that he purchased, at coroner's sale, under execution on a judgment at law, the undivided interest of John and Daniel Loveless, in the real estate of their father, before any partition had been made among the devisees, and while they were tenants in common with eight others. That this interest is subject to levy and sale under execution on a judgment at law, is abundantly established by the decisions of this, and of other courts of the highest respectability in the United States, and that the purchaser at such sale will take the title of the tenant in common whose interest is sold, is equally well settled. Mendenhall v. Randon, 3 S. & P. 251; Black v. Steel, 1 Bailey, 309; 16 Ohio, 271; Den v. Hillman, 2 Halstead, 180; Kelly v. Morgan, 3 Yerg. 437; Durant v. Cabbage, 2 Hill, S. C. 311.

In the case last cited, which was an action of ejectment by the purchaser at sheriff's sale, against the defendant in execution, to recover his undivided portion in the lands sold, of which the defendant in execution, and the other joint tenants, were in possession, the court would not permit the other joint tenants to become defendants, lest the action of the purchaser might be defeated; but they allowed him to recover, upon the strength of his legal title, acquired by his purchase, and, afterwards, to hold as joint tenant with the others. All the cases concur in treating the title of such a purchaser as a perfect legal title, and in substituting him to all the legal rights, to which the joint tenant, or tenant in common, was entitled in the land thus sold.

In the case of Graham v. Abercrombie, 8 Ala. Rep. 552, this court held, that "the interest of a legatee in an unsettled estate is the subject of assignment; and if one is made, it divests the interest of the distributee, so that no proceedings can be had by his representatives against the administrator; his assignee is thereby vested with all his rights, and they may be asserted by him in his own name." This decision is so well sustained by the reasoning of Mr. Justice Goldthwaite, who delivered the opinion of the court, and the authorities to which he refers, that I regard it impregnable; and I must confess my inability to discover any difference between the rights of one who derives his interest in an undistributed estate through the voluntary assignment of the distributee,

and one who acquires such rights under a purchase author-ized and sanctioned by law, and which all the authorities concur in saying, casts on him a perfect legal title, which he may assert in a court of law.

It seems to be thought, however, that because the admin-istrator, by virtue of our statute, may rent lands, and, in cer-tain contingencies, sell them, that, therefore, the right of the heir or devisee does not vest, until it is ascertained whether the real estate will be needed for the payment of debts. This conclusion is by no means a necessary one from the premises. The rights of the heir or devisee to the lands descended or de-vised, remain as they were before the passage of these acts. There is nothing in them to prevent the legal estate from vesting in him, on the death of the ancestor or testator; but the rights and powers given to the administrator by statute, are only so many incumbrances on his title, and both he, and a purchaser of his interest, take the title, subject to the legal call of the executor or administrator, should it be needed for the payment of debts, or for distribution. He may pass the title immediately on the death of the ancestor, and as he has a legal interest which he can convey, that interest must, of necessity, be subject to sale on execution for the payment of his debts. 16 Ohio, 271; 1 Barb. 75.

The power of the administrator to sell for the purpose of paying debts, is one conferred on him by the statute, for the protection of the rights and interests of creditors, who, by the policy of our law, are always preferred to the heir; and consequently, it cannot be affected by the act of heir or de-visee, or by any assignment he can make; or, indeed, by any right derived from him, whether it accrue to the party as-serting it by the act of the heir himself, or by the act of the law. Until the trust created by the statute in favor of cred-itors, of which the administrator or executor by statute is made trustee, is fully discharged, no act of the heir, or title derived through him, will be allowed to operate to defeat his power to sell the realty to pay the debts of the ancestor. This proposition, I apprehend, will scarcely be disputed.

The same statute which confers on the personal represent-ative the power to sell real estate for the purpose of paying debts, gives to him similar power for the purpose of making

a fair, equal, and beneficial division of such estate among the heirs, devisees, or distributees. As, in the one instance, the law constitutes him trustee for the creditors of the intestate or testator, so, in the other, the same law makes him trustee for those entitled to the realty. The law, and not the parties in interest, creates the trust, appoints the trustee, defines his powers, and points out and regulates the manner of their exercise, as well as the contingency on the happening of which they shall be called into action. To say, that when this contingency arises, one of the beneficiaries of the trust can, by his action alone, defeat the exercise of the power of the trustee, would be to assert a proposition which the law, according to my apprehension of it, not only does not sanction, but expressly repudiates. This trust is created, and is to be exercised, for the benefit of all who have an interest in the real estate. In the record before us, it is shown that there are ten devisees; and to hold that any number, short of the whole of them, could defeat the power of the administrator to sell for the purpose of distribution, when he makes proper application to the Orphan's Court, and, according to the statute and our practice under it, shows that a fair, equal, and beneficial division cannot be made, among the parties in interest, without it, would be to hold, that the declared purposes of the law are subject to be defeated by the action of a portion of the devisees, or distributees. And, if such action is allowed to defeat the purposes and objects of the statute, when they relate to the power to sell for distribution, I am not master of any process of reasoning, by which such a result, from the same cause, would not arise, where the object of the exercise of the power, is a sale for the purpose of paying the debts. The statute has blended the two objects for the exercise of the power together, and conferred the power itself in the same words in each case; and that which will defeat its exercise for one, will also defeat it for the other.

2. Having seen that the purchaser at the coroner's sale, is the legal owner of the right and interest of John and Daniel Loveless, in the lands devised by their father, I come to consider the question, whether this interest is one which he can assert in the Orphans' Court. To my mind, this question is al-

ready settled in the case of Graham v. Abercrombie, before cited. In that case, the interest of the assignee of the legatee was propounded in, and adjudged by the Orphans' Court. In this, the application is made to the same court, by one who, through the sale of the coroner, has become the legal owner of all that ever belonged to the two devisees whose interest he bought, in the lands of the father; and I have no hesitation in saying, that the defendant in error became as fully and amply entitled to all the rights and remedies of Daniel and John Loveless, in respect to the lands devised, as though they had voluntarily assigned them to him. If I am right in this, then the case of Graham v. Abercrombie is decisive of this branch of the inquiry, and is conclusive to show that the Orphans' Court erred in repudiating the case for the reasons assigned by it.

But it is said, that in the case of Graham v. Abercrombie the question arose on a regular settlement of the administrator's accounts, and not under the act which authorizes legatees and others to seek partial distribution, after eighteen months have elapsed from the grant of letters of administration. It is difficult to perceive how this can affect the question of jurisdiction in the Orphans' Court. The persons who are entitled to seek distribution in the two cases, are, according to the language of our statutes, the same. In both statutes the language employed to describe them is identical, and I think it beyond question, that the purchaser of a devisee's interest, at sheriff's sale, is a "person entitled to distribution" in the testator's estate; and it makes no difference at what period of the administration he seeks it, provided the devisee himself would be entitled to the remedy at such period. In short, such purchaser is substituted to all the rights and remedies to which the devisee, whose interest he has bought, would himself have been entitled, had no sale taken place.

That he could, when it was ascertained that it was not necessary for the administrator to make sale of the lands for the payment of debts, or for distribution, compel partition of the real estate in any form of action which the law allows to the devisee, will scarcely be seriously doubted. What, then, is to hinder him from seeking his distributive portion of the purchase money, when the lands have been sold by the ad-

ministrators avowedly for the purpose of making distribution among the persons entitled to it? There certainly could be nothing, provided all the parties interested in the realty were regularly made parties to the application for the order of sale. It would not be tolerated that, after a sale thus regularly made, the devisees, or those claiming under them, either in privity of contract or privity of law, should be allowed to repudiate the sale, and assert their title to the lands devised, against the purchaser at the sale made by the administrator. Having been made parties to the proceedings under which the sale was made, they would be concluded by the decree, and estopped from afterwards setting up title to the premises sold.

This, however, does not appear by the record of this case. It is no where shown that the defendant in error was made a party to the application of the administrators for power to sell the lands. But I do not conceive that there are no other means by which the devisees, or those claiming under them, could be estopped from setting up their title against the purchaser at the sale made by the administrator. Another, equally as effectual, exists here. The defendant in error, by filing his petition in this case, setting forth his title to the lands; the sale by the administrator; the price for which it was sold; the value of the rents; and praying distribution of the money arising from such sale and rents, waives, by this record, every objection he could take to any irregularity which existed to his prejudice in the proceedings by which it was brought about, and assents to the title of the purchaser, in a manner fully as effectual in law, as he could have done, by being made a party to the proceedings for the sale, or by his deed duly executed for that purpose. He is estopped by the record in this case from ever setting up his title against the purchaser at the administrator's sale. Bean v. Welch, 17 Ala. Rep. 770.

The power of the administrators to sell the lands for purposes of equal distribution among the devisees, is as full and ample, as it is to make sale of them for the purpose of paying debts, and the proceedings to bring about a sale are the same in both cases. Clay's Digest. When the sale is made, the effect of it is, to divest the title of the devisees, and cast it on

the purchaser; for, the order of sale made by the Orphans' Court, vests the title in the administrator, for all the purposes contemplated by it; and if this be regular, or if the irregularities are waived by those whose interests are affected by them, the title of the purchaser, under such sale, can never be successfully impeached by the devisees.

The proceedings in this case were commenced under our statute, (Clay's Dig. 196 §§ 23 and 24) by which it is enacted, that " any person entitled to distribution of an intestate's estate may, at any time after the expiration of eighteen months from the granting of letters of administration, petition the Orphans' Court, setting forth his claim; whereupon it shall be the duty of said court, to grant a rule on the administrator, administratrix or administrators, (as the case may be,) to make distribution agreeably to law; but no administrator, administratrix, or administrators, shall be compelled to make distribution at any time, until bond and security be given by the person entitled to distribution, to refund a due proportion of any debts or demands which may afterwards appear against the intestate, and costs attendant on the recovery of such debts." The twenty-fourth section extends the benefits of the twenty-third to legatees and devisees.

It has been shown that the Orphans' Court erred, in repudiating the petition of the defendant in error, for the reasons alleged in the answer of the administrators with the will annexed, and those set forth in its own decree of dismissal. Yet, it-is equally clear, to my mind, that the opposite decree of the Circuit Court, when its terms are examined in reference to the legislative enactments above cited, cannot be sustained.

The decree of the Circuit Court is in these words: "It is therefore ordered and decreed, that the said administrators, James Smith and William Loveless, pay to the said Isaac P. Hall the interest of Daniel and John T. Loveless, arising from the proceeds of the sale of the said lands, amounting to eighty-three dollars, for which let execution issue." This decree is absolute in its terms, and no where extends to the administrators that protection which the law throws around them, at the time it allows distribution before the estate is

finally settled. No refunding bond is required to be given, but the administrators must pay the sum found due, without any indemnity for the loss they might sustain if debts or demands afterwards appeared against the estate of the testa·tor. While the law, on the one hand, will not permit an administrator, upon frivolous pretences, to withhold from the heir his inheritance, after eighteen months have elapsed from the date of his letters; it will not, on the other hand, allow the latter to draw from the hands of the former the funds of the estate, which may be needed for the payment of debts, without giving him security that the·funds thus withdrawn shall be ready to meet such necessity when it may arise. The failure of the Circuit Court to require, by its decree, the execution of such a bond, as a condition precedent to the issue of execution, is an error for which it must, in my opinion, be reversed.

The requirement of this act is very similar to the provision made by law for the protection of non-resident defendants in chancery, who have not submitted to the jurisdiction of that court; and this court has constantly regarded the failure of the Chancellor, to require the execution of the bond provided for in that case, as an error, so fatal that the decree would be reversed, notwithstanding it was proper in all other respects. Rowland et al. v. Day, 17 Ala. Rep. 681.

For another reason, also, I think the decree of the Circuit Court cannot be sustained. The record from the Orphans' Court does not pretend to set out all the proof which was before that court, in relation to the amount of money in the hands of the administrators, arising from the sale and rents of the lands devised, after the defendant in error became interested in them; nor, indeed, does it embody, in any form, so as to constitute them a part of the record, any facts whatever, as having been proved or admitted before it, which established the sum for which the defendant in error was entitled to a decree. There is no bill of exceptions in the record of the Orphans' Court, embodying the evidence there given; there is no recital of proof in the decree of that court, by which the Circuit Court could be advised of the state of facts necessary to be ascertained before a final decree could be understandingly rendered. The Circuit Court, being thus

without the proof necessary to sustain a decree against the administrators, should have gone no further than to reverse and remand the cause. There may be, and doubtless there are cases, in which it would not only be proper, but it would become the duty of the Appellate Court, on reversing the judgment of the court below, to proceed at once to render the proper judgment; but this is not one of that class.

The decree of the Circuit Court should, in my opinion, be reversed, and the cause remanded to that court, with instructions for it to reverse the decree of the Orphans' Court, and remand the cause to the Probate Court of Tallapoosa county, to be there proceeded in according to the principles laid down in this opinion.

DARGAN, C. J., concurs in this opinion.