## HARRISON v. MAHORNER, Ex'r.

1. When a testator dies in Virginia, and the will is there proved, and letters testamentary granted, by the proper tribunal, the executors so qualified, and appointed, are entitled to sue in the courts of this State, on recording their letters testamentary, as required by the act of 1821, in preference to one who has an ancillary grant of letters testamentary on the same will, in the State of Mississippi. A plea setting up these facts, is a good plea in bar to an action upon the ancillary grant. *Quere*, would it not be good, either in bar or in abatement.

Error to the Circuit Court of Pickens.    Before the Hon. S. Chapman.

DEBT by the defendant in error, executor of Nathaniel H. Hooe, against the plaintiff in error. The plaintiff in his declaration makes profert of his letters testamentary, obtained in the State of Mississippi, and duly recorded according to the statute.

The defendant pleaded—1. That the plaintiff was not the executor of Nathan H. Hooe, in manner and form as in his said declaration alledged.

2. He craved oyer of the letters testamentary, which being set out, show, that letters testamentary were granted to the plaintiff, on the estate of the deceased, in Noxubee county, in the State of Mississippi, and duly recorded in the office of the county court of Pickens. It is then alledged, that Nath. H. Hooe, before, and at the time of his death, was a citizen of the county of King George, in the State of Virginia, and departed this life testate, in the State of Virginia, in August, 1844, having made his last will and testament, and appointed Arthur H. Bernard, Abram H. Hooe, Mathias Mahorner, and others, his executors. That on the 7th November of that year, the said will was duly proved in the county court of the said county of King George, which was

the place of his residence at the time of his death, and thereupon Daniel Coakley, and M. Gurley, two of the executors appointed by said will, qualified, and took upon themselves the execution thereof, &c. &c.

To this plea the plaintiff demurred, and his demurrer was sustained by the court.

Upon the trial, as appears by the bill of exceptions, the defendant objected to the reading of the copy of the letters testamentary, issued by the probate court of Mississippi, which was overruled by the court, and he excepted. These matters are now assigned as error.

E. W. PECK, for plaintiff in errror.

1. Our statute which authorizes foreign executors and administrators to sue in this state, must be construed to give this authority to executors and administrators in chief only, and not to those whose administration is ancillary merely. Clay's Dig. 227, § 31.

2. Any other administration than that granted where the deceased had his domicil, is ancillary merely. Fay v. Haven, 3 Metcalf, 109, 114; Stevens, adm'r, v. Gaylord, 11 Mass. 263; 2 vol. U. S. Dig. 362, § 45.

3. An ancillary administrator cannot maintain an action out of his own jurisdiction, that is, out of the State where he received his appointment. Dawes v. Boyleston, 9 Mass. 337; 2 U. S. Dig. 362, § 47; Story's Confl. L. § 513, 515.

4. If the defendant disputes the right of the plaintiff to sue in the representative character he has assumed, he must plead *ne unques executor*, which is a plea in bar. 1 Ch. Pl. 485, 486; Stallings v. Williams' adm'r, 6 Ala. 509-10; 1 Saund. Rep. 274, n. 3.

B. F. PORTER, for the defendant in error, made the following points: 1. The production of the letters of another State, are for the satisfaction of the court, and the only plea defendant can file is one in abatament, that letters have been granted in this State. Cloud v. Golightly, 5 Ala. 655. The

pleas here are in bar, and their conclusion bad. Rogers v. Smiley, 2 Porter, 249; 4 Ala. 599. The case in 1st Stewart does not apply in this case. There the plea was, a want of jurisdiction, because the executor appointed in South Carolina, was in this State. And the replication raised wholly different issues. See Gayle and Pitts v. Blackburn, 1 Stew. 429. But if this case did apply, it is not good authority. It smells of mortality, as well as of antiquity.

2. On such pleas as would bring up a proper issue, the only evidence is, the production of the letters, certified as our statute directs. 2 Greenl. Ev. § 339. By law, independent of our statute, no suit could be maintained by the executors in Virginia, or Mississippi, in this State. To give such right they must comply with the statute, and aver it. This we have done; and their failure to aver that they have done so makes the plea bad. 6 Ala. 353; Story's Confl. L. §§ 513, 514, and note 2 on p. 882, latest edition.

3. In an action by an executor on a contract with his testator, if profert be made, *ne unques executor* is not a good plea. Worthington, adm'r, v. McRoberts, 7 Ala. 814. If profert be made by the executor, the proper course for defendant is to crave oyer, and make exception to the sufficiency of the letters, or their authentication. 3 U. S. Dig. 184, § 1303; 2 N. & M. 64.

4. The right of taking out letters in the several states, where assets are, is undoubted, as a matter of course. Story Confl. L. § 513; Boston v. Boyleston, 2 Mass. R. 385, 391. Title to moveable property is acknowledged, *ex comite*, and subject to be controlled or modified, as every nation thinks proper. Story's Confl. L. § 512. As to the practice in the case of foreign executor, see Story's Confl. L. § 513.

5. The letters granted in Virginia, would not be recognized in this State, because none of the requirements of our statute are complied with. They have not, like ours, been confirmed by proper judicial proceedings. Story's Confl. L. § 511.

6. The administrator of a foreign state cannot claim any

Harrison v. Mahorner.

interest in goods of intestate, subject to administration in another. Thus the executor in Virginia, without he complies with the local law of Mississippi, cannot, by virtue of letters granted in Virginia, claim any interest in the goods in Mississippi. But plaintiff, by virtue of his letters obtained in Mississippi, can in this state, because he has complied with the local law of Alabama. Story's Confl. L. § 514, b, and note 2, p. 882; Goodwyn v. Jones, 3 Mass. R. 514, 519-20; Doolittle v. Lewis, 7 Johns. C. R. 45, 47.

7. In the case of property in several states, it belongs to the representatives first, who in the limits of their own state, reduce it to possession. Story's Confl. L. § 521. Administrators in several states, are independent of each other. There is no privity between them. Story's Confl. L. 523.

COLLIER, C. J.—By an act passed in 1821, it is enacted, that when letters testamentary, probate of a will, or letters of administration on the estate of any testator, &c., having no known place of residence in this state, at the time of his death, shall have been duly obtained in any other state, &c., and no personal representative of such testator, or intestate, shall have been appointed and qualified in this state, the representative appointed out of this State, "may maintain any action, demand and receive any debt, and shall be entitled to all the rights and privileges which he, she, or they, could have done, or would have had, if duly appointed and qualified within this State : *Provided always*, that before the rendition of judgment in any such action, there shall be produced in court where the same is pending, a copy of such letters testamentary, probate, or letters of administration, duly authenticated, according to the laws of the United States in such cases, and the certificate of the clerk of the county court of some county in this state, that such certificate has been duly recorded in his office; and in default of such proof the court may direct a non-suit to be entered : *And provided further*, that such foreign representative shall not be entitled to receive any money so recovered, or any money due to

Harrison v. Mahorner.

him in such right, until the copy of the letters testamentary, probate, or letters of administration, shall have been recorded as aforesaid, and there shall have been deposited in the clerk's office of the county court of the county in which the debtor, or debtors, may reside, a bond, in such penalty as the judge of said county court may direct, payable to him and his successors in office, and with such obligors thereto as he may approve; conditioned, that such representative shall faithfully administer, and apply according to law, all monies and effects received by him, in right of such testator, or intestate, from any person in this State, and on such bond, suit may be brought, and judgment recovered as in other cases." Clay's Dig. 227, § 31.

According to the common law, as recognized both in England and the United States, no suit can be brought or maintained by, or against an executor or administrator, in his representative character in the courts of any other country than that from which he derives his authority to act. If he desires to sue in a sister state, or foreign country, he must there obtain letters testamentary, or of administration, and give new security, according to the general rules of law there recognized. Story's Confl. of Laws, § 513, and citations in note 1. The right of a foreign executor or administrator to take out such new letters of administration is usually admitted, unless special reasons intervene to forbid it; and the new administration is treated as merely ancillary to the original administration, so far as it regards the collection of the effects, and the proper distribution of them. Still, however, it is made subservient to the rights of creditors, legatees, and distributees, who are are resident within the country where such new administration is granted; and the residuum is transmissible to the foreign country only, when a final account has been settled in the proper tribunal, where the new administration was granted, upon the principles adopted by its own law, in the application and distribution of assets found there. Id. and notes 1 and 2.

Where there are different administrations granted in different countries, that is deemed the principal or primary administration, which is granted in the country of the domicil of the deceased party ; for the final distribution of his effects among his heirs or distributeess, is to be decided by the law of his domicil. Hence, any other administration granted in another country is treated as auxiliary merely, and is generally held subordinate to the primary grant. But each administration is deemed so far independent of the others, that property received under one, cannot be sued for under another, although it may at the moment be locally situate within the jurisdiction of the latter. Thus, if property is received by a foreign executor or administrator abroad, and afterwards remitted here, an executor or administrator appointed here, could not here assert a claim to it, either against the person in whose hands it might happen to be, or against the foreign representative. The only mode, it is said, of reaching it, if necessary for purposes of due administration in the foreign country, would be to require its transmission, or distribution, after all the claims against the ancillary executor or administrator had been duly ascertained and settled. Story's Confl. of L. § 518.

The powers of an executor or administrator are referable to the laws of the country from which he derives his authority, since it is settled that no administration, whether original or auxiliary, has any extra-territorial operation ; consequently, a foreign executor or administrator can only collect the assets of the deceased in another jurisdiction, in virtue of a legislative permission—*ex comitate legis.* Story's Conf. of L. § 514, and note 3. See further as to these several propositions, 1 Mason's Rep. 381 ; Dawes v. Boyleston, 9 Mass. Rep. 337 ; Dawes v. Head, 3 Pick. Rep. 143 ; Doolittle v. Lewis, 7 Johns. Ch. Rep. 45 ; McRae's adm'r v. McRae, 11 Louis' Rep. 571 ; Stevens v. Gaylord, 11 Mass. Rep. 256 ; Thorne v. Watkins, 2 Ves. Rep. 35 ; Hooker v. Olmstead, 6 Pick. Rep. 481 ; Shultz v. Pulver, 3 Paige's Rep. 182 ; Trecothick v. Austin, 4 Mason's Rep. 16 ; Tyler v. Bell, 2 Mylne

& C. Rep. 89; Attorney Genl. v. Hope, 2 C. & Finelly's Rep. 84; Spratt v. Harris, 4 Hagg. Eccl. Rep. 405; Anderson v. Caunter, 2 Mylne & K. Rep. 763; Dixon's Ex'rs v. Ramsay's Ex'rs, 3 Cranch's Rep. 319; Kerr v. Moon, 9 Wheat. Rep. 565; Vaughan et al. v. Northup et al. 15 Pet. Rep. 1; Aspden et al. v. Nixon et al. 4 How. Rep. 467; Kane v. Paul, 14 Pet. Rep. 33; Fay v. Haven, 3 Metc. Rep. 109; Curle v. Moore, 1 Dana Rep. 445; Naylor v. Moody, 2 Blackf. Rep. 247; Sabin v. Gilman, 1 N. Hamp. R. 193; Riley v. Riley, 3 Day's Rep. 74; Davis v. Estey, 8 Pick. Rep. 475; Jennison v. Hapgood, 10 Pick. Rep. 77; Campbell v. Sheldon, 13 Pick. Rep. 23; Chapman v. Fish, 6 Hill's Rep. 555; Hobert v. Conn. Turn. Co. 15 Conn. Rep. 145; Reynold v. Torrence, 2 Brev. Rep. 59; Helme v. Sanders, 3 Hawk's Rep. 563; Leake v. Gilchrist, 2 Dev. Rep. 73; Winter v. Winter, Walker's Rep. (Miss.) 211.

In Helme v. Sanders, *supra*, it was said, that an executor in North Carolina must take out letters testamentary in another state, for the purpose of recovering a debt there, if, considering the amount of the debt and the expences the interest of the estate require it.

It has been held, that under an ancillary administration, the administrator has authority to collect and pay debts, and is liable for the contracts and duties of the testator, recoverable, and which may be enforced within his jurisdiction, but is not liable in the court of probate, upon any partial account, to be there rendered and adjusted, to a decree either of payment or of distribution, whether for a legacy, or to any one claiming by a supposed succession of the effects of the deceased. See Dawes v. Boylston, *supra;* Jennison v. Hapgood, *supra.*

In Porter v. Heydock, 6 Verm. Rep. 374, it was decided that, where there is administration in Vermont ancillary to that of another State, the courts of Vermont will settle the accounts for effects there received; and it is discretionary with them either to order distribution there, or to remit the effects to the principal administration; the latter is the usual

course, but it will not be adopted to the prejudice of parties interested.   So it has been held, that if an administrator appointed in another State take out letters in Massachusetts, he is bound to pay the creditors in the latter State out of the assets received there, a *pro rata* dividend, authorized by the general solvency or insolvency of the estate, and remit the balance to the place of the principal administration.   Richards v. Dutch, 8 Mass. Rep. 506 ; Davis v. Estey, *supra.* If ancillary administration be granted in another State, to one who is executor in Massachusetts, the judgment of the foreign State upon his liabilities there, if it can be enforced, is conclusive on the courts of Massachusetts, and he may pay over voluntarily what he. might be compelled to account for.   And if the executor has a surplus in his hands arising out of the administration of the testator's goods, and estate, in another State, after paying the expenses of administration and discharging his own liabilities there, he must account for it in Massachusetts in the same manner as if another had been appointed, and had paid over a balance.   Stevens v. Gaylord, *supra;* Jennison v. Hapgood, *supra.*

An executor of the will of one who lived in New Hampshire, took out ancillary administration in Vermont, and upon a final settlement made of his accounts in the latter, a balance arising from the sale of lands in that State was found in his hands, for which the court there ordered him to account in New Hampshire :  *Held,* that he was accountable for such balance as personal property in New Hampshire.   Heydock's Appeal, 7 N. Hamp. Rep. 496.   In Churchill v. Boyden, 17 Verm. Rep. 319, it was decided that where an ancillary administration was granted in Vermont upon the estate of one who resided in another State, creditors living in such other State are not entitled to have their claims allowed by the commissioners appointed in Vermont.

The act of 1821 is an enabling statute, and confers upon the personal representative duly appointed in another State, of a testator or intestate having no known place of residence in this, at the time of his death, and no executor or adminis-

trator here appointed, the right to sue, &c. in the courts of this State, subject to the restrictions contained in the *proviso*. It is conceded, that letters testamentary have never been granted in this State upon the testator's will; the plea alledges that the testator was a resident in the State of Virginia, that he there died, and that the execution of his will was there regularly committed to several of the persons therein designated executors, who are still acting in that character, and negatives the fact of the testator's residence in Mississippi, from a court of which State the plaintiff received the authority under which he deduces the right to sue. The question arising under the demurrer to this plea is, whether the grant of administration in Mississippi entitles the plaintiff to maintain a suit in this State.

It is exceedingly clear from the authorities cited, that the administration granted in Virginia, where the testator lived and died, is primary and original, and that that under which the plaintiff is acting, is ancillary or auxiliary. True, neither grant *proprio vigore* can operate *extra territorium*, and if they are to be here recognized, it must be under the statute referred to.

If the case cited from 3d Hawkes, lays down the law correctly, it may be well questioned whether it is not the duty of the executors, who qualified in Virginia, in the absence of a direct grant of administration to some third person, to take measures to collect the debts for which the present action is brought; but we forbear the consideration of this question.

Assets collected by an ancillary administrator, we have seen, are subservient to the creditors, legatees and distributees. When the claims against the estate are ascertained and settled, they are then to be regularly distributed or transmitted to the original executor or administrator, and the law of the tribunal to which he is accountable, must determine how the estate shall be disposed of. It seems to result from this statement of the nature and character of the respective administrations, that the plaintiff's powers are assistant, having reference to so much of the testator's estate as is in Mis-

sissippi, while the laws of Virginia exert a more enlarged influence in regulating the distribution of legacies, &c.

It will be observed, that the authority given to the executor or administrator appointed out of this State, is limited to "the personal representative or representatives;" obviously contemplating but one appointment, though it may be conferred upon a plurality of persons. If, then, the letter of the law is to be followed, is not he to whom the *original*, instead of him to whom the *ancillary* administration is committed, entitled to the privilege of the statute? Or, in case of a controversy between them in respect to the prosecution of the suit, to whom shall the right to sue be conceded? Or shall either prosecute an action in our courts, if the other does not object? We think the source from which the original grant emanated— the more extensive operation of the laws of that jurisdiction over the estate of the testator, &c. warrant the conclusion that the executors qualified in Virginia, have the superior right to the comity extended by the act of 1821. This right must be considered as exclusively vested in these executors, not a mere floating privilege, to be exercised by an ancillary representative appointed in any other State than this, if they elect to yield it to him. These conclusions seem to result so obviously from the legal platform we have educed from the books, that it is difficult to illustrate it by a more extended argument. To this it may be added, that there is a seeming unfitness in permitting the executor in Mississippi to withdraw assets from this State to be there administered, or transmitted to Virginia, instead of leaving it to those to whom the primary administration was committed, or a representative here appointed, to administer them.

We incline to the opinion that the plea sets up a defence which is available either in abatement or in bar; that it may be pleaded in the latter form, we cannot doubt. In Jenks v. Edwards, use, &c. 6 Ala. Rep. 143, the defendant pleaded in bar that the nominal plaintiff departed this life previous to the commencement of the suit, and this court held that it was good. It was asked, "why should not a plea in that

form be good?" and said that "the nature of it is such, that it cannot give the plaintiff a better writ, that he may institute another suit; and a verdict upon an issue thus formed, against the plaintiff, will not bar an action by his personal representatives, founded upon the same cause." This reasoning is strikingly applicable to the case at bar. See also Kennedy v. Kennedy's adm'r, 8 Ala. 391.

The sufficiency of the evidence objected to, on the trial of the issue upon the first plea, has not been controverted at the bar, and the view taken of the second plea, perhaps makes its consideration unnecessary. We would however remark, that we can discover no objection to its admissibility, and think it was *prima facie* sufficient; more especially as the letters testamentary do not indicate upon their face that they are an ancillary grant of administration, and the transcript is certified and attested agreeably to the act of Congress of 1804, amendatory of the previous enactment of 1790. Kennedy v. Kennedy's adm'r, 8 Ala. Rep. 391. See also Hughes v. Harris, 2 Ala. Rep. 269; Cloud v. Golightly's adm'r, 5 Ala. Rep. 654; Tarver's ex'rs v. Boykin, 6 Ala. Rep. 353.

For the error of the circuit court in sustaining the demurrer to the second plea, the judgment is reversed, and the cause remanded.