## Hatchett *v.* Berney.

*Bill in Equity to set aside Entry of Satisfaction of Mortgage, and for Account and Foreclosure.*

1. *Letters testamentary, or of administration; extra-territorial operation.*—It was a principle of the common law, and it is the settled doctrine of this court, that letters testamentary, or of administration, have no extra-territorial operation, and, as matter of right, confer title only to the personal assets within the jurisdiction by which they were granted; and it was a general rule of the common law, as a consequence of this principle, that an executor or administrator, although he might be the domiciliary or principal representative, could not sue or be sued, in his representative character, in the courts of any other country.

2. *Foreign executors and administrators; statutory provisions as to suits by.*—By statute in this State (Code, §§ 2637-40), a foreign executor or administrator, on the estate of a person who was not an inhabitant of this State at the time of his death, is authorized to maintain suits, and to recover and receive property here, but is required, before the rendition of judgment, or the receipt of the property, to have a copy of his letters, duly authenticated, recorded in the office of the probate judge of the county, and to give bond, approved by the probate judge, conditioned for the faithful administration of the assets he may receive; which statutory provisions are permissive and prohibitory.

3. *Payment to foreign executor or administrator.*—Under these statutory provisions, a voluntary payment, by a debtor resident here, to a foreign executor or administrator, who has not had his letters recorded here, and given bond as required, can not be supported, against the claim of an administrator subsequently appointed here.

[Hatchett v. Berney.]

4. *Judgment in favor of foreign executor or administrator.*—A judgment recovered by such foreign executor or administrator, without a compliance with these statutory provisions, against a debtor here, though his suit might have been defeated by a plea denying his authority to sue, is conclusive as between him and the debtor; but, as against an administrator subsequently appointed here, between whom and such foreign representative no privity exists, it is *res inter alios acta;* yet, if the money collected by the foreign administrator, under the judgment, has been applied as the domestic administrator would be compelled to apply it, the debtor may have relief in equity against the claim of the domestic administrator.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 15th January, 1877, by W. T. Hatchett, as the administrator of the estate of Berry C. Owens, deceased, against James Berney; and sought the foreclosure of a mortgage on certain lots in the city of Montgomery, and an account of the mortgage debt. The mortgage, a copy of which was made an exhibit to the bill, was dated the 13th October, 1859, conveyed several city lots in Montgomery, and was given to secure the payment of five promissory notes of said Berney, payable to said Berry C. Owens. These notes were of even date with the mortgage; were payable on the 1st day of January in the years 1860, 1861, 1862, 1863, and 1864, respectively, with interest from the 1st January, 1861; were given for the purchase-money of the lots, and were for $2,000 each. About the time this mortgage was given, or soon afterwards, Owens removed to Bedford county, Tennessee, and there died, in December, 1861; and his last will and testament was there duly admitted to probate in January, 1862, and letters testamentary thereon granted to Richard H. Sims as executor. The note first falling due seems to have been paid at or about maturity; and $1,200 was paid on the second, on the 6th February, 1861, to Richard B. Owens, of Montgomery, who was the brother of said Berry C. Owens, and had possession of the notes. In May, 1862, the two notes falling due the 1st January, 1861, and 1862, respectively, were placed for collection, by said Richard B. Owens, in the hands of Martin, Baldwin & Sayre, attorneys in Montgomery; and the amounts due on them were paid by said Berney, at different times during the years 1862 and 1863, in Confederate treasury-notes, or other currency, to said attorneys, and by them paid over to said Richard B. Owens; and the notes were delivered up to Berney. After the close of the war, Sims, the executor of Berry C. Owens, disputing the validity of these payments, brought suit in the District Court of the United States at Montgomery, to recover the amount claimed to be due on these two notes; and he also brought suit in the City Court of Mont-

gomery, on the two notes falling due the 1st January, 1863, and 1864, respectively. No defense was made in the City Court, and judgment by default was rendered on the 8th February, 1866, for $5,955.66, besides costs. The suit in the District Court was continued from term to term, and was transferred to the Circuit Court of the United States at Mobile. Sims died in December, 1874; and in May, 1875, letters of administration *de bonis non* on the estate of said B. C. Owens were duly granted by the proper court of Bedford county, Tennessee, to Lewis Tillman; and the suit pending in the Federal court was, soon afterwards, revived in his name. Neither Sims nor Tillman ever had a copy of his letters recorded in this State, as authorized by the statute (Code, §§ 2637–40); but no objection on that account seems to have been made in either of the suits against Berney.

In 1868, or 1869, the judgment in the City Court being unsatisfied, the attorneys of Sims threatened to foreclose the mortgage; and thereupon, Berney, by the advice of his attorney, as he alleged in his answer to the bill in this case, delivered up to them the possession of the mortgaged premises, on which a livery-stable was situated. In November, 1875, as he alleged in his answer, thinking that the rents and profits of the property had paid the balance due on his debt to Owens, Berney instructed his attorney to institute the necessary legal proceedings to regain the property; and being then informed that this could not be done while the suit in the Federal court was pending, he proposed, through his attorney, a compromise of that suit, or of the matters in litigation. The extent of this compromise, or the matters embraced within its terms, seems to have been the material question in the court below. The letter of D. S. Troy, Berney's attorney, which was made an exhibit to his answer, dated November 15th, 1875, and addressed to "Messrs. Elmore & Gunter," proposing a compromise, was in these words: "I am authorized by Dr. James Berney to propose, that if you will dismiss the suit against him by the executor of Berry Owens, to recover the amount of the notes which he paid in Confederate money, and surrender to him possession of the 'stable property,' so long held by Judge Martin as agent for the estate of Owens, Dr. Berney will release the estate of Owens from all liability to account for rents during the period Judge Martin held the property, and will pay the costs of the suit, leaving you free to pursue the estate of R. B. Owens, the party who got the money." This proposition was not accepted; but, by the terms of the verbal compromise agreed on, Berney also paid $1,000 in money, and the costs of the suit in the Federal court, which was thereupon

dismissed; and satisfaction of the mortgage was entered of record by Jno. A. Elmore, as attorney in fact of Lewis Tillman, and also indorsed on the mortgage.

The indorsement on the mortgage was in these words: "The debt secured by this mortgage is fully discharged, and this mortgage is hereby released and cancelled; as witness my hand and seal, this 18th day of April, 1876;" signed, "LEWIS TILLMAN, by his attorney in fact, *J. A. Elmore.*" The entry of satisfaction on the margin of the record was as follows: "I, Lewis Tillman, senior, administrator *de bonis non*, with the will annexed, of Berry C. Owens, hereby declare, that mortgage of James Berney to Berry C. Owens is this day satisfied; and make this entry at the request of said Berney, in compliance with the statute in such cases made and provided, this 18th April, 1876. This entry is made under the power of attorney hereto attached." (Signed, "LEWIS TILLMAN, adm'r *de bonis non*, with the will annexed, of Berry C. Owens, by his att'y in fact, *J. A. Elmore.*") The power of attorney, under which these entries were made, which was executed in Bedford county, Tennessee, and dated April 3d, 1876, was in these words: "I, Lewis Tillman, administrator," &c., "do hereby constitute and appoint John A. Elmore, of the city of Montgomery, Alabama, my agent and attorney in fact, for me, and in my name as administrator, to execute a release under seal, to James Berney, of all the interest held by said estate in and to certain lots in said city of Montgomery," describing them, "and a release, under seal, of the mortgage made by said Berney to said Owens, of the said lots, to secure the payment of certain notes described in said mortgage, which mortgage is dated," &c.; "and also, for me, and in my name as said administrator, to make on the margin of said record an entry of satisfaction of said mortgage."

On the 18th of October, 1876, a copy of the last will and testament of said Berry C. Owens, duly authenticated, was recorded in the office of the probate judge of Montgomery county, Alabama; and letters of administration on his estate, with the will annexed, were granted by the Probate Court of said county to W. T. Hatchett, the general administrator of the county. In the original bill, Tillman and Hatchett were joined as complainants; the bill alleged that the compromise embraced only the matters litigated in the suit pending in the Federal court, and offered, if Berney should elect to stand by and ratify the compromise, to allow him a credit for the $1,000 paid by him under its terms; and the prayer was, "that an account may be taken of the amount due to said Hatchett, as administrator as aforesaid, upon the said judg-

ment in said City Court against said Berney, and that the real estate conveyed by said mortgage may be sold, under the orders of the court, for the payment of the same ; and in the event that said compromise is vacated and set aside, at the instance of said Berney, then that an account may also be taken of the amount due to said Hatchett, as said administrator, for and on account of the two notes of said Berney first due according to the terms of said mortgage, and that said Hatchett may have a decree therefor, and that said real estate may be sold for the payment thereof." The bill alleged, also, that the estate of Owens owed no debts in Alabama ; that the administration of Hatchett was only intended to collect the debt due from Berney, and to transmit the money to Tillman in Tennessee ; and that Tillman, when he entered into the compromise, had no knowledge or information of the judgment in the City Court.

Berney answered the bill, admitting all the material facts up to the date of the compromise ; but he insisted that his entire debt to Owens was fully paid, and that the compromise was intended to embrace, and did embrace, not only the pending suit in the Federal court, but also the judgment in the City Court ; and he pleaded the compromise and release, in bar of the relief sought by the bill. An amended bill was then filed, striking out the name of Tillman as a complainant, and making him a defendant. The amended bill alleged, also, that the release of the mortgage, and the entry of satisfaction on the record, exceeded Elmore's authority, and were made through ignorance and mistake as to the judgment in the City Court, and that they had never been ratified by Tillman. The prayer of the amended bill was, "that said entries and indorsements on said mortgage, and on the margin of said record, be vacated and held for naught; or that they be amended and corrected, so as to show that they apply alone to the two notes falling due in January, 1861, and 1862, on which suit was pending in the said United States court, and not to the whole mortgage debt; and that said Berney be enjoined from setting up such entries and releases, as defenses in any proceeding at law by said complainant, as said administrator, or by any other representative of said B. C. Owens, to collect said judgment ; and that an account be taken of the amount due by said Berney on said judgment ; and that the real estate described in said mortgage be sold, under the decree of this court, to pay what shall be found due on said account. Or, if it should be held that said judgment is not valid and subsisting, and can not be enforced by complainant as such administrator, then that an account may be taken of the amount due on said two notes last falling

[Hatchett v. Berney.]

due ; and that said real estate embraced in said mortgage be sold, under the decree of the court, to pay the amount found due on the taking of said account.   Or that said settlement and compromise be set aside, and declared null and void ; and, in that event, that an account may be taken of the amounts due on said four notes, falling due on the 1st January, 1861, 1862, 1863, and 1864, respectively, if the said judgment should be declared void.   Or, if said judgment should be declared valid, and said settlement and compromise should be set aside, and declared null and void, then that an account may be taken of the amounts due on said judgments, and on said two notes falling due in 1861 and 1862 ; and that said real estate embraced in said mortgage may be sold, by the decree of this court, to pay the amount so found due ;" and for other and further relief.

On final hearing on pleadings and proof, the chancellor held, that Tillman was really the complainant in the suit, and was attempting to collect a second time a debt which Berney had already paid in good faith ; and that the complainant could not have any relief on account of the alleged mistake of fact in the compromise, since the mistake, if proved, was unilateral only, and Berney could not, since the deaths of Sims, Elmore, and Martin, establish his rights, if the matters were again opened.   He therefore dismissed the bill ; and his decree is now assigned as error.

GUNTER & BLAKEY, for appellant.—1. The powers of an executor are referable to the laws of the country from which he derives his authority, since no administration, whether original or ancillary, has any extra-territorial operation ; consequently, a foreign executor or administrator can only collect the assets in another jurisdiction, by virtue of a legislative permission.—*Robinson v. Robinson*, 11 Ala. 947 ; *Harrison v. Mahorner*, 14 Ala. 843.   In the case last cited, it is shown, pp. 832–3, that the statue which enables foreign executors and administrators to act here, upon complying with the requisitions of the statute, prohibits them from acting until there is such compliance ; and to the same effect, see *Bradley v. Broughton*, 34 Ala. 708.   Under these authorities, the compromise made by Tillman is not in the way of Hatchett : the latter may either disregard it entirely, or stand by it to the extent that Tillman understood it to go.   As Tillman, not having complied with the statute, had no authority to receive property here, the payment of the thousand dollars by Berney was in his own wrong.   In this view of the case, it is unnecessary to inquire whether there was a

mistake in the compromise, such as a court of equity will correct.

2. Berney's conduct and representations are consistent with good faith, only on the supposition that the compromise was intended to embrace only the matters in litigation in the United States court. Neither Tillman, nor his attorney, nor Berney's attorney, had any knowledge of the judgment in the City Court; and it cannot be supposed that they intended to include it in the compromise, when they had never heard of it. If Berney had knowledge of that judgment, and had reason to believe that Tillman and his attorney were ignorant of it, and he intended to take advantage of their ignorance, his conduct operated a fraud on Tillman. But it is clear that Berney was not then aware of the unsatisfied judgment, and that the idea of having it included in the terms of the settlement is an after-thought. Be that as it may, the mistake was mutual between the respective attorneys, and is relievable in equity.—1 Story's Equity, §§ 164–6 ; Simmons v. North, 3 S. & M. 67.

3. Indorsements on the mortgage note may be explained, and also those on the mortgage itself, or on the margin of the record. As between the parties, such indorsements are mere receipts.—1 Hill. Mort. 324, § 50 ; McDaniel v. Lanhams, 21 Vermont, 222 ; Pearce v. Savage, 45 Maine, 90 ; Parsons v. Wells, 17 Mass. 419 ; Windham v. Sangar, 3 Metc. Mass. 224. The statute provides, too, that all receipts, releases, and discharges in writing, whether of a debt of record, or contract under seal, or otherwise, must have effect according to the intention of the parties.—Code, §§ 3039–40. All instruments and contracts, however solemn, are liable to be set aside, vacated, or corrected, in equity, when they are the result of fraud, accident, or mistake.—Trippe v. Trippe, 29 Ala. 643 ; Simmons v. North, 3 Sm. & Mar. 67 ; 9 U. S. Digest, 1st series, p. 87, and cases cited.

4. The cancellation of a mortgage on the record is, in equity, only prima facie evidence of its discharge. It may be proved to have been made by fraud, accident, or mistake ; and on proof of that fact, the mortgage will be established. The same rule must apply to an indorsement of release on the mortgage.—Robinson v. Sampson, 23 Maine, 388 ; Trenton Bank Co. v. Woodruff, 1 Green, N. J. 117 ; Chappell v. Allen, 38 Mo 213 ; Fleming v. Posey, 24 Penn. St. 47 ; Cross v. Stahlman, 43 Penn. St. 129 ; Bruce v. Berney, 12 Gray, Mass. 107 ; Bento v. Ourland, 15 N. J. Eq. 103 ; Branon v. Bingham, 26 N. Y. 483 ; Croker v. Thompson, 3 Metc. Mass. 224 ; McDaniels v. Lanham, 21 Vermont, 222.

[Hatchett v. Berney.]·

D. S. TROY, *contra.*   (No brief on file.)

BRICKELL, C. J.—It is the settled doctrine of this court, and of the common law, that letters testamentary, or of administration, have no extra-territorial operation, and title derived from them extends, as matter of right, only to the personal assets which are found within the jurisdiction of the government from which they are derived.   As a consequence of this doctrine, it is a general rule of the common law, that an executor, or administrator, though his letters may have been obtained at the last domicile of the deceased, and administrations in other jurisdictions would be merely ancillary, entitling him to the *residuum* of the assets, after satisfying the claims of the resident creditors, or next of kin, or legatees, and such *residuum* would be transmissible to him, can not sue, or be sued, in his representative capacity, in any other State or country than that from which the letters were derived.   If he desires to reduce to possession assets elsewhere, new letters must be obtained; and if the local law would not be contravened, *ex comitate,* he would be preferred in the grant of such administration.   The new administration would be subservient to the rights and interests of creditors, legatees or distributees, resident within the jurisdiction from which it is obtained; and from such jurisdiction he would be permitted to withdraw only the *residuum,* which would be transmissible to him if some other person were the resident executor or administrator.—*Densler v. Edwards,* 5 Ala. 31; *Childress v. Bennett,* 10 Ala. 751; *Harrison v. Mahorner,* 14 Ala. 829; *Bradley v. Broughton,* 34 Ala. 694; Story's Conf. Laws, §§ 512–13; Wharton's Conf. Laws, §§ 604–12; *Noonan v. Bradley,* 9 Wall. 394.

While, as to suits for the recovery of the assets, the title and authority of the personal representative of the last domicile of the deceased is confined and limited to the territorial jurisdiction of the government from which they are derived, or extended only to the *residuum* after the satisfaction of the claims and rights of residents of other jurisdictions in which ancillary administration may be taken; there is now presented a different question—whether, in the absence of a domestic administration, his title and authority may not be voluntarily recognized, and debts paid to him, or other assets surrendered; such payment or surrender affording full protection against the claim of a domestic administrator subsequently appointed.   The doctrine of the English courts is, that such payment or surrender affords no protection against the claim of a domestic administrator.—Whart. Con. Laws, § 626.   A preference for the English doctrine seems to be

expressed by Judge Story (Story's Conf. Laws, § 515 a), though he had affirmed the contrary in *Treathick v. Austin,* 4 Mason, 16. The Supreme Court of the United States maintain the validity of such payments or delivery of the assets ; and the general current of authority supports them, there being, when they are made, no domestic administration.—*Mackey v. Coxe,* 18 How. 104; *Wilkins v. Ellett,* 9 Wall. 741; *Parsons v. Lyman,* 20 N. Y. 103 ; Whart. Conf. Laws, § 626. In *Metcalf v. Lowther,* 56 Ala. 312, a kindred question was presented—the validity of a payment, made by a guardian appointed and qualified in Georgia, to the guardian in Alabama, the domicile of the infant. The payment was supported, operating a discharge of the foreign guardian from a claim subsequently made by the infant.

The rule cannot be followed, however, if the local law of the foreign jurisdiction would be violated. Each State has the right and power of determining the disposition of all property having an actual *situs* within its jurisdiction, and the administration of it on the death of the owner. The personal representative of the last domicile of the deceased may be left to the right and authority the general law recognizes ; or that may be enlarged, and the right and authority of a domestic personal representative may be conferred on him, so far as is deemed politic ; or all recognition of his right and authority may be withdrawn, or the terms on which he may exercise it and the validity of his acts recognized, may be prescribed.

The statute of force when the transactions referred to in the bill occurred, authorized a foreign executor or administrator, who had obtained in any other of the United States letters testamentary, or of administration, on the estate of a person who was not at his death an inhabitant of this State, to *maintain suits, and recover or receive property in this State,* upon condition that, before judgment or receipt of the property, a copy of his letters, duly authenticated, was recorded in the office of the judge of probate of the county in which suit was brought, or property received, and giving bond, with two good and sufficient sureties, payable to, and approved by the judge of probate, in such amount as he prescribed, to be determined with reference to the amount to be recovered or received, with condition to administer faithfully such recovery or property received. Before obtaining judgment, he was bound to prove a compliance with this condition ; and when there had been a compliance with the condition, the recovery of judgment, or a delivery of property to him, was "a protection to the defendant, or person delivering the

property, to the extent of such judgment, or value of such property."—Code of 1876, §§ 2637–2640.

The statute is permissive, and prohibitory. It confers on the foreign executor, or administrator, the privilege or liberty of suing in our courts, without taking out new letters here, and the right of receiving, without suit, assets which are here situate. Each subject is embraced and dealt with by the statute : not only the privilege of suit by virtue of his original administration,—a privilege he did not have, by the general law ; but the right of receiving without suit assets here situate,—a right the general law recognized, when there was no domestic administration ; and each is placed upon the same footing. The judgment obtained by him is a protection to the defendant only when he has complied with the statutory condition ; and the voluntary delivery of property to him, without suit, can be supported, only when there has been such compliance. Though the statute does not, in words, express a prohibition of suits, or the voluntary delivery to him of property, in the absence of a compliance with the condition, yet such is its manifest spirit and intent. It prescribes the terms, upon which he may exercise here the authority derived from a foreign jurisdiction ; and to the extent to which there might be recognition of such authority, in the absence of compliance, there would be practical contravention of the legislative will.

If a judgment should be obtained by a foreign executor, or administrator, without a compliance with the statute, it would not be void as between him and the party against whom it was obtained. The want of authority to maintain the suit would be matter of a plea *ne unques executor, or ne unques administrator ;* and it could not be presented in a more appropriate mode, under our system of pleading, in which there is no profert of letters testamentary, or of administration. It is matter of defense, which the defendant may, if he chooses, waive ; and if he does waive it, he can not be heard subsequently to gainsay the force and effect of the judgment, which, as to parties and privies, would conclusively determine that the money for which it was rendered was legally due to the plaintiff.—*Cloud v. Golightly,* 5 Ala. 653 ; *Noonan v. Bradley,* 9 Wall. 354. A judgment is conclusive of the rights of parties, and of all defenses which could have been urged against its rendition.

While, as between parties and privies, the judgment is conclusive, as to a domestic administrator, it is *res inter alios acta,*—not concluding or barring any right he may derive from the grant of administration to him. If a necessity for it existed—if the foreign administrator was enforcing the

[Hatchett v. Berney.]

judgment, while the domestic administrator was claiming, in opposition to it, the demand upon which it may be founded, seeking to compel its payment to himself—some appropriate remedy could be found for the relief of the defendant from being subjected to a double payment. Or, if payments are voluntarily made to the personal representative of the domicile, and he should account for them, so that they reached their proper destination, a court of equity would intervene for the protection of the party making them, against the claims of the domestic administrator, who, if he were permitted to recover them, would be compelled to appropriate them to the same uses and purposes to which the foreign administrator had applied them. We speak, of course, of a case like the present, where the rights and equities of no creditor, distributee, or legatee, resident in this State, would be affected.

While the judgment obtained by Sims, the domiciliary executor, against Berney, in the City Court of Montgomery, without a compliance with the statute, is not void as between the parties, it cannot be used as evidence against the appellant, nor can it affect or prejudice the rights the grant of administration to him conferred—right and title to all the assets which at the death of the testator had an actual *situs* within this State, or which were subsequently brought within the State. As to the appellant, the judgment is *res inter alios acta*—he is a stranger to it. There is no privity between a domestic and foreign administrator, though the foreign may be the domiciliary representative. The two administrations, though the domiciliary is styled the principal, and the other the ancillary administration, are distinct and independent, and are conducted according to the laws of the respective *forums.*—Story's Conf. Laws, § 518 *a; Harvey v. Richards,* 1 Mason, 381; *Childress v. Bennett,* 10 Ala. 751; *Fretwell v. McLemore,* 52 Ala. 124.

At the death of Owens, the promissory notes of Berney, the mortgage given to secure their payment, and the real estate conveyed by it, were in this State, which was the place of Berney's residence. The statute expressly declares, that when a person, not an inhabitant of this State, dies, leaving assets here, the Court of Probate of the county in which such assets are situate has authority to grant administration of them.—Code of 1876, § 2349. By the terms of the statute, the place for the grant of administration of these assets is defined. The domiciliary administrator, in the absence of a domestic administration, could, by a compliance with the statute, have entitled himself to receive them. But it is only when he has complied with the statute, subjecting himself to

(4)

the jurisdiction of our courts, furnishing security here for a faithful administration of them, that he could become entitled. The policy pervading our statutes, which cover the whole subject of administrations, foreign and domestic, is, that assets here at the death of the decedent, or subsequently brought within our jurisdiction, shall be subject to a domestic administration, or shall not be withdrawn by the domiciliary foreign administrator, until he follows the statute, and thereby subjects himself to be reached and dealt with, if a necessity should exist for it, as a domestic administrator. The transactions with Sims, the foreign executor, and with Tillman, his successor, as administrator *de bonis non*, with the will annexed, without the record of the will and its probate, the record of the letters testamentary, and the execution of the bond, in conformity to the statutes, cannot affect the right of the appellant, a domestic administrator subsequently appointed, except so far as payments made to Sims or to Tillman may have been applied by them, as such payments would be applied if now recovered by the appellant; and to this extent, we understand the bill as recognizing their validity, and offering to allow them. These transactions were without the authority of the foreign administrator as it is defined by the statutes; and into the extent of the authority, Berney was bound, at his peril, to inquire before entering into them.

The payment of the debt in suit in the Circuit Court of the United States is recognized, and is not now a matter of controversy. The remaining notes, whatever may be the construction of the several instruments which were entered into by the parties, are not satisfied, save so far as payments may have been made to the foreign representative, which were legally appropriated by him. The foreign representative was without authority to receive them, or to enter into the written instruments, without a disregard of the statutes.

The decree of the chancellor must be reversed; and a decree will be here rendered, foreclosing the mortgage, directing an account of the mortgage debt, and ordering a sale of the premises, if it is not paid in a prescribed period; and the cause will be remanded.