# Grayson, Admr. *v.* Robertson, Admr.

## *Bill for Interpleader.*

1. *Administration·of non-resident's estate; effect of appointment of administrator in this State.*—Where a non-resident dies owning personal property having a situs in this State, and an administrator is duly appointed at the place of his residence, all right of such domiciliary administrator to authority over the personal assets of the decedent situated in this State cease upon the appointment by a competent court of this State of a resident ancillary administrator; and in such ancillary administrator title to all the personal assets in this State at once vests, and he becomes clothed with all powers incident to the administration of such assets; and this title and these powers are exclusive, leaving in the foreign and domiciliary administrator only the right to receive the residium of the estate upon the final settlement of the domestic or ancillary administration.

2. *Same; foreign administrator is not entitled to payment of withdrawal value of intestate's stock in building and loan association.*—A foreign administrator of a non-resident who dies owning stock in a building and loan association organized and having its place of business in this State, has not the power to receive from such building and loan association the withdrawal value of his intestate's stock without having first complied with the statute which prescribes the conditions on which a foreign executor or administrator can receive property in this State belonging to the estate of his decedent, (Code of 1896, § 359); but even this right is defeated by the appointment of a resident ancillary administrator in this State before the foreign administrator had received such payment.

3. *Same; when foreign administrator is entitled to payment of withdrawal value of intestate's stock in building and loan association.*—The statute authorizing a resident or foreign ad-

[Grayson, Admr. v. Robertson, Admx.]

ministrator to transfer the shares of stock held and owned by an intestate in a private corporation existing under the laws of this State and to receive payments of dividends on such stock (Code of 1896, § 1264), does not confer upon a foreign administrator of a non-resident who died owning stock in a building and loan association organized and having its place of business in this State the power to receive from such building and loan association the withdrawal value of his intestate's stock; the statute restricting the power granted to the administrator to a transfer of the shares of stock in, and to receive the dividends from, corporations organized under the laws of this State, which does not include the power to receive the payment of the withdrawal value of the stock.

4. *Same; same; right not conferred by administrator making payment on shares of stock increasing withdrawal value thereof.* Where a foreign administrator of a non-resident who died owning shares of stock in a building and loan association organized and having its place of business in this State, increased the withdrawal value of his intestate's stock by making payment on the stock after the intestate's death, and then filed with the association the stock for withdrawal, surrendering the certificate, and the association in a letter to the administrator acknowledged the receipt of the certificate and stated that the application was on file and would be paid in its order, but the shares of stock continued to stand on the books of the association in the intestate's name, there is no novation or any merger of the rights of the estate in the stock into a contract made by the association with such foreign administrator, conferring upon him the title to the stock and the right to collect the withdrawal value thereof, as against a resident ancillary administrator appointed by a court of th's State before the payment of the withdrawal value had been made.

5. *Same; situs of stock in corporation.*—For the purpose of administration, the situs of the interest in a corporation, as evidenced by certificates of stock, is in the State in which the corporation was organized and has its place of business; and the fact that a non-resident died owning stock in a corporation organized and having its place of business in this State, and the foreign administrator acquired possession of the certificates of stock, does not affect the situs of the interest owned by the decedent in such corporation.

APPEAL from the Chancery Court of Madison.
Heard before the Hon. WILLIAM H. SIMPSON.

[Grayson, Admr. v. Robertson, Admx.]

The facts of the case are sufficiently stated in the opinion.

GRAYSON & FOSTER, for appellant.—Before a foreign administrator of a non-resident is entitled to administer upon the assets of his intestate's estate in Alabama, he must comply with the requirements of the statute, (Code of 1896, § 359). There has been no attempt in this case to comply with the statute, and yet the foreign administratrix asks to be given possession of the property conceded to be within this jurisdiction, against the administrator appointed by a probate court in this State. There are numerous decisions of our Supreme Court holding that the compliance with this statute is an essential prerequisite to the maintenance of a suit in our courts, or the collecting of assets without suit.— *Hatchett v. Berney*, 65 Ala. 39; *Ferguson v. Morris*, 67 Ala. 389; *Harris v. Moore*, 72 Ala. 507.

The resident ancillary administrator of a non-resident estate is entitled to administer on the assets of the estate as represented by the shares of stock in the building and loan association in this case; such property being assets within the meaning of sub-division 3 of section 55 of the Code providing for the grant of letters of administration by the probate courts of this State in their respective counties.

It is conceded that Scipio H. Robertson, the intestate, died in the State of Georgia, leaving, among other assets, forty shares of stock in the Southern Building & Loan Association, a corporation chartered under the general laws of the State of Alabama, and having its principal place of business in Huntsville, in Madison county. That such property is "assets" within the meaning of the statute is too well settled by the decisions of the Supreme Court of Alabama, to require discussion.—*Winter v. London*, 99 Ala. 263; *Hatchett v. Berney*, 65 Ala. 39; *Barclift v. Treece*, 77 Ala. 528; *Broughton v. Bradley*, 34 Ala. 694.

For the purpose of the questions here presented, the contract made by the non-resident intestate with the building and loan association partakes more of the na-

ture of a deposit in an Alabama savings bank than a sub-scription to stock in a corporation. It is simply the deposit of an amount, in small installments, which the depositor is entitled to draw out at any time, with the interest that has accrued. From this standpoint, it can not be seriously contended that the fund involved in this controversy is not assets of the estate of Scipio H. Robertson, which has and has always had, ever since it became invested with the character of property, its actual situs in Madison county, and, as such, should be administered by the administrator appointed by the probate court of Madison county in this State.—*Hatchett v. Berney*, 65 Ala. 39; *Winter v. London*, 99 Ala. 263; *Barclift v. Treece*, 77 Ala. 528; *Broughton v. Bradley*, 34 Ala. 694; *Grimball v. Patton*, 70 Ala. 626.

The fact that a foreign administrator had acquired possession of the certificates of stock in a building and loan association does not affect the right of a resident ancillary administrator to receive the withdrawal value of such stock.—*McCully v. Cooper*, 35 L. R. A. 492. The policy of our courts has always been to give preference to administrators appointed in this State, even though the rights of the foreign administrator have already intervened, to any funds or property remaining in their jurisdiction.—*Broughton v. Bradley*, 34 Ala. 694; *Hatchett v. Berney*, 65 Ala. 49.

R. W. WALKER, *contra*.—The statute (Code of 1896, § 1264) provides that an administrator deriving his appointment, if the intestate resided without the State, from the proper tribunal of his domicil "may transfer the shares of stock held and owned by such * * intestate in any private corporation existing under the laws of this State; payment of dividends on such stock may be made to such * * administrator." In giving him the right to transfer stock and to collect dividends on it, the statute confers upon the administrator of the domicil, in effect, the ownership and control.—*Hatchett v. Berney*, 65 Ala. 47.

The appellee having been appointed administratrix by the proper court of the intestate's domicil, and having

[Grayson, Admr. v. Robertson, Admx.]

possession of the certificate for the stock, the above mentioned statute conferred upon her the same powers in reference to it as if letters of administration had been issued to her by the probate court of this State. The stock being a chose in action, her power of disposition was as full as if she was the absolute owner.—*Chandler v. Chandler*, 87 Ala. 300; *Bank v. Leavens*, 4 Ala. 753; *Jellenik v. Huron Copper Min. Co.*, 82 Fed. Rep. 778.

The provisions of the Code (§ § 359, 360) authorizing foreign personal representatives to sue for and recover, or receive property generally, upon complying with the conditions of filing copies of their letters and executing bonds, can not apply to dealings with corporate stock which section 1264 of the Code authorizes without compliance with any conditions whatsoever. As to matters covered by the latter section, a foreign personal representative, without complying with any preliminaries, has the same powers as a domestic personal representative. *Winter v. London*, 99 Ala. 263; *Johnston v. Wallis*, 19 N. E. Rep. 653.

The intestate's right to the shares having already been merged in the contract of the association, rightfully made, to pay the withdrawal value to appellee, before the Alabama administrator was appointed, there was at the time of such appointment no assets of the intestate's estate in Madison county, subject to administration there, and that appointment was absolutely void and should be so declared on collateral attack.—*Bradley v. Broughton*, 34 Ala. 707.

PER CURIAM.—Scipio H. Robertson departed this life intestate a short time prior to 18th day of September, 1896, in Atlanta, Georgia, the place of his domicile. At the time of his death he was the owner of forty shares of the stock of the Southern Building & Loan Association, a corporation organized under the laws of this State, having its principal place of business in the city of Huntville, and carrying on the business of a building and loan association, as averred in the bill and admitted by the answers. upon the plan usually adopted by such associations. The shares were of the "par or maturity

[Grayson, Admr. v. Robertson, Admx.]

value" of fifty dollars each, and were evidenced by a certificate executed by the corporation, bearing date the 4th day of October, 1890. Under the rules and regulations adopted by the corporation, which, by express terms, became a part of the contract of membership, each shareholder was required to pay monthly in advance thirty-five cents for each share held by him, and any shareholder failing or neglecting to pay his monthly installments for a period of three months "forfeits his shares." These rules and regulations further provide that if a member dies, his personal representatives may withdraw his shares at any time, if they should elect to do so, and be entitled to receive the money paid into the "Loan Fund" on such shares, together with interest at the rate of six per cent. per annum; and further, that, upon making seventy-two payments, the shareholder, or his personal representative, may withdraw and, upon such withdrawal, he would become entitled to a certain percentage of the profits which the association had earned from the date of the issue of the certificate to the date of the seventy-second payment. At the time of his death, the decedent had made sixty-seven payments, and, at that time, the withdrawal value of his certificate was nine hundred and sixty dollars and 80 cents ($960,-80). On the 18th day of September, 1896, Amanda L. Robertson was appointed administratrix of the decedent's estate by the Court of Ordinary in and for Fulton county, in the State of Georgia, and, as such administratrix, she became possessed of the certificate for the forty shares of stock, and, soon after her appointment, paid to the Southern Building & Loan Association the sum of thirty-five dollars, which, added to the payments made by the decedent in his lifetime, made the number of payments upon the stock seventy-two, thus entitling the holder, upon withdrawal, to a given percentage of the profits earned, under the rules and regulations above referred to. She completed this payment in January, 1897, and applied for a withdrawal, surrendering to the association the certificate of stock, and the pass-book, as required by the rules and regulations; and on the 30th day of March, 1897, the association wrote her a letter, stating

that "her application is on file and will be paid in its order." After completing the seventy-two payments, the withdrawal value of the shares was one thousand two hundred and forty-nine and 92-100 dollars ($1,249.92). On the 30th day of March, 1897, John W. Grayson was appointed administrator of the decedent's estate by the court of probate of Madison county, in this State, and on the same day filed with the association an application for withdrawal, and demanding that the withdrawal value of the shares be paid to him. It seems from the correspondence read in evidence that this application and demand were made before the association wrote the letter above mentioned, stating to Mrs. Robertson, or her attorneys, that the application was on file and would be paid in its order. It may be added that the rules and regulations of the association provide that the maturity or withdrawal value of shares is payable at the home office in the city of Huntsville. Thereupon, the bill in this cause was filed by the association against both of the administrators of Scipio H. Robertson, deceased, praying, among other things, that they might be required to interplead, and that their respective rights to the fund in question might be determined. Both defendants answered the bill, and, upon final hearing, had upon pleadings and proof, a decree was entered by the court below, declaring that Amanda L. Robertson, as administratrix, was entitled to the fund, and ordering the same, less costs and certain expenses, to be paid to her; and from that decree this appeal was taken by John W. Grayson, the ancillary administrator.

While it is true that the personal assets of a decedent, though situate in different jurisdictions, constitute but one estate, and must be distributed according to the law of the domicile at the time of his death, it is equally true that letters testamentary or of administration, granted by a foreign State or country, having no extra-territorial operation, do not, as a matter of right, confer title to, or authority over personal assets found without the jurisdiction from which the grant is derived. In the absence of statutory provision, enabling in its nature, a personal representative, as such, has not the capacity to sue for

the recovery of assets belonging to the estate of his decedent in any other State or country than that from which the letters were derived. In order to collect and administer such assets, there must be, in the absence of statutory provision, ancillary administrations in the different jurisdictions in which such assets may be found; such administrations, when granted, drawing to them the title to, and immediate right to the possession of, the assets although the residium, after the satisfaction of claims of residents, goes to the domiciliary administration for distribution. Such is the doctrine of the common law, as repeatedly recognized and declared by this court.— *Hatchett v. Berney*, 65 Ala. 39; *Barclift v. Treece*, 77 Ala. 528. Our statute, in recognition of that comity which should prevail among the different States, has given authority to a personal representative appointed in another State, to maintain suits and recover or receive property belonging to the estate of his decedent, and situated in this State; but the authority thereby given is not absolute, but qualified: before he has the right to exercise such authority, he must comply with the conditions prescribed by the statute.—Code of 1896, § 359. This statute is not only permissive, but it is also prohibitory; permissive, upon the compliance with its conditions; prohibitory, in the absence of such compliance. *Hatchett v. Berney*, 65 Ala. 39, *supra*. Under the construction placed upon the statute by this court nearly forty years ago, the right thus conferred upon a foreign administrator or executor may be defeated by the appointment of a personal representative in this State before the former has reduced the assets to possession.— *Bradley v. Broughton*, 34 Ala. 694. In conferring authority upon executors or administrators deriving their office from foreign appointment, not enjoyed under the common law, the spirit of comity is manifest; but in the qualifications placed upon this authority as well as in also placing qualifications upon an unqualified authority previously existing at common law, the intention to jealously guard and protect the rights of citizens of the State, interested in the decedent's estate, is equally manifest and pronounced.

23

We do not understand, however, that these principles, as general propositions, are controverted by the counsel for the appellee. Recognizing them as settled principles of law, as we understand his position, he seeks to remove the right asserted on behalf of his client in this case from their influence, by the contention (1) that, while these principles are correctly stated in their application generally to personal assets, they do not apply to the shares of the capital stock of a corporation, because of the provisions of section 1264 of the Code (1896); and (2), that, even if they did originally apply to such shares, the payments made by his client upon these shares of stock belonging to the decedent's estate, thus increasing the withdrawal value of the shares, the filing of the application for withdrawal with, and the surrender of the certificate to, the association, and the promise of the association to pay the withdrawal value to his client, effected a novation, rightfully and lawfully made, thus conferring upon her the title to the shares, and the right to collect the withdrawal value thereof; or, as otherwise expressed by him, operated to merge the stock in a contract lawfully made by the association with his client. To neither of these propositions can we yield our assent. The statute which is relied on in support of his first contention reads: "An executor or administrator, deriving his appointment from a court of probate of this State, or, if the testator or intestate resided without the State, from the proper tribunal of his domicil, may transfer the shares of stock held and owned by such testator or intestate in any private corporation existing under the laws of this State; payments of dividends on such stock may be made to such executor or administrator."—Code, § 1264. Whether this statute intended to confer upon the foreign personal representative the power to transfer shares of stock in the corporation mentioned, and to receive dividends therefrom, without a compliance with the terms of section 359 of the Code, it is not now necessary to decide; for it is clear that the legislature, in enacting this statute, did not intend to confer these powers on both resident and foreign representatives, where domiciliary and ancillary administrations had been

granted, making them co-existent, leaving it to a race of diligence between them as to which should exercise the powers; nor was it thereby intended to give any preference to the foreign over the domestic personal representative. The same statute gives the same powers to both, to be exercised by the one or the other according to their respective rights as declared by law. Whatever authority over the personal assets of a decedent situated in this State, a foreign executor or administrator may have prior to the grant of letters by a competent court of this State, that authority ceases upon such appointment. Upon such appoinment, the title to all personal assets in this State vests in the person so appointed, and he is clothed with all powers incident to the administration of such assets; and this title and these powers are exclusive, leaving in the foreign and domiciliary personal representative only the right to receive the *residium* of the estate upon the final settlement of the domestic or ancillary administration.—*Hatchett v. Berney*, 65 Ala. 39, *supra; Winter v. London*, 99 Ala. 263. In the last case cited, section 1264 of the Code was before this court for consideration, and HARALSON, J., speaking for the court in respect to this section, said: "But the same section confers the same power and authority on an executor or administrator, deriving his appointment from a court of probate in this State." If there is any conflict between the provisions of this section, "it is our duty to construe them *in pari materia,* and make them both operative, if such construction can be placed upon them. There is, however, no conflict between them. The latter section merely provides for the transfer of stock by a foreign executor or administrator *when there is no administration in this State.* It does not deny the same right to an administrator appointed here. It is simply cumulative, in extending this authority to a foreign executor or administrator." It follows, therefore, that, even assuming the power to transfer the shares of stock in, and to receive dividends from, corporations organized under the laws of this State, conferred by the statute, includes the power to receive from the complainant the withdrawal value of the decedent's shares, such power was

intercepted and defeated by the appointment of the defendant Grayson as administrator by the court of probate of Madison county.   But we cannot concede that the powers given by the statute include the powers here contended for; on the contrary, we are of the opinion that they do not.   Two powers, and only two, are conferred by the statute—the power to transfer shares, and the power to collect dividends.   The power to transfer, including, it may be, the power to sell, and the power to receive dividends, are, it may be admitted, strong *indicia* of ownership, and, if used in other relations, might be taken as conferring all rights and powers pertaining to ownership; but given as they are, to personal representatives, and construed in the light of the common law and of other statutes, defining and declaring the rights and powers of such representatives over the personal assets belonging to decedents' estates, we are unwilling to give them such a broad construction, but rather to limit them to the restricted import of the language of the statute. In this case, there was no transfer or attempted transfer of the shares; nor is the collection of dividends involved.

The shares in a building and loan association, and the rights of the holders thereof, are peculiar and *sui generis*, differing, in essential particulars, from shares and the rights of shareholders in other business corporations. In the case under consideration, the shares seem to be divided into classes, and the by-laws and regulations of the association provide for the maturity of these shares, and, at their maturity, the association agrees to pay a sum definite, in extinguishment of the rights of the shareholders; and these by-laws and regulations, as heretofore shown, provide for the withdrawal from membership, upon the death of the stockholder, the association agreeing ,in such event, to pay a certain sum, based on the amount the decedent had paid and interest thereon at six per cent. per annum; and they further provided for the withdrawal, upon making seventy-two payments, by the shareholder himself, or, upon his death, by his personal representative; the association, in such event, agreeing to pay a certain sum, based on his proportion of certain profits earned by the association during his

membership. In either case, upon such withdrawal, and upon a compliance with the by-laws and regulations, by surrendering the certificate and pass-book, the association, thereby, and *eo instanti*, becomes indebted to the shareholder in the amount provided for by its by-laws and regulations; and, upon the payment of that sum, the relation of shareholder and corporation ceases, and the rights of the shareholder in the assets and management of the corporation are extinguished; and for the amount of such indebtedness an action of *assumpsit* would lie against the corporation. Therefore, whether before the withdrawal the shares are to be considered as mere choses in action or not,—as to which question there is much contrariety of opinion in the adjudications of the courts,—after the withdrawal, the right of the shareholder does become a mere chose in action, controlled by the principles of law, and enforceable by the remedies, applicable to such species of property. The appellee, as administratrix, upon her appointment, no administrator having then been appointed in this State, had, doubtless, the right to withdraw and thus fix the amount owing by the association to the estate of her decedent, according to the regulations of the association, based upon the payments which he had made in his lifetime, or, to pay to the corporation a sum of money sufficient to make seventy-two payments; thus, under the regulations of the association, increasing the amount coming to the estate represented by her. In either event, the effect of her act was merely to fix the amount which the corporation owed upon the shares held by her intestate, and to terminate his liability for further payments, and his right to participate in the future profits earned by the association. It appears from the evidence, that the shares continued to stand on the books of the company in the name of the deceased; and no express change of ownership whatever is shown, and none results by implication of law from the acts and conduct of the parties. Such being the case, it cannot be said that there was any novation, or any merger of the rights of the estate in any contract made by the appellee with the association, entitling her to a recovery of the withdrawal value of the shares.

Whatever sum she expended in enhancing the withdrawal value of the shares, she may be entitled to recover from the Alabama administration, in appropriate proceedings, or upon appropriate pleadings in this case; but such expenditure cannot affect the rights of Grayson, as the administrator appointed in this State, to collect from the association the withdrawal value of the shares.

The fact that the appellee came into the possession of the stock, and afterwards surrendered the same to the association, upon her application for withdrawal, is unimportant in determining which of the administrators is entitled to the fund in question. A certificate of stock is merely the evidence of ownership; the *situs* of the interest which it represents, for the purposes of administration, must be in the State in which the corporation was organized and has its place of business. It is the *situs* of the corporation, not the domicile of the holder of the certificate, that determines. Such was the ruling of the Supreme Court of Tennessee in a case involving the attachment of shares of stock in a foreign corporation; and, we think the reasons are more cogent for applying the principle to the facts in this case.—*Young v. South Tredegar Iron Co.*, 85 Tenn. 189, (4 Am. St. Rep. 752); 2 Beach on Priv. Corp., § 633. The surrender of the shares was necessary, under the rules and regulations of the association, to the withdrawal, and it was surrendered to perfect such withdrawal, and the rights of the estate, and the liability of the association, resulting therefrom. We cannot see that it has any further significance. It certainly could not, and did not operate a change of ownership in the shares, or effect the right of recovery of their withdrawal value by the appellant. Before the money was paid to the appellee, whatever rights she may have had to the stock, or to the withdrawal value thereof, were intercepted and defeated by the appointment of the appellant.

The view which we have been constrained to take of the case, renders it unnecessary to pass upon the other assignments of error.

[Rice *et al.* v. Eiseman Bros. & Co. *et al.*]

The decree of the chancery court, in so far as it adjudges that the appellee Robertson is entitled to the fund in question, and orders the payment thereof, less costs and expenses, to her, is erroneous; and it is, therefore, reversed, and the cause remanded for further proceedings in conformity with this opinion.

The foregoing opinion was prepared by former Chief Justice BRICKELL.